IN RE the PATERNITY OF BABY DOE:

THOMAS M.P., Petitioner-Appellant,

v.

KIMBERLY J.L., Respondent-Respondent.

Court of Appeals

*No. 96–0697. Submitted on briefs November 5, 1996.—Decided December 10, 1996.*

(Also reported in 558 N.W.2d 897.)

On behalf of the petitioner-appellant, the cause was submitted on the pro se brief of *Thomas M. P.* of Wausau.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Anne L. Jacobson* of Wausau.

On behalf of the guardian ad litem, the cause was submitted on the brief of *Mary Ann Perga*, of *Byrnes & Perga* of Turtle Lake.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Thomas M.P. appeals a judgment denying further proceedings to establish his paternity of Baby Doe. Thomas argues that he was denied due process when the court dismissed his paternity action prior to blood testing and trial, and the court erred by going beyond the statutory procedures for paternity actions when it held an evidentiary hearing to determine the best interests of the child.

Kimberly J.L. (Baby Doe's mother) and the guardian ad litem argue that Thomas was not denied due process because he has no constitutionally protected right to a paternity determination and the trial court did not err when it decided that it was not in the child's best interests to establish paternity. They also argue that denying Baby Doe a hearing to determine whether a paternity determination is in her best interests violates equal protection.

Because paternity procedures do not address parental fitness, we conclude that the trial court erred when it conducted the pre-blood test hearing and denied Thomas his statutory right to blood tests and a paternity determination.[1] We also determine that § 767.458(1m), STATS., does not violate equal protection. Therefore, we reverse the judgment and remand for a paternity determination.

---

[1] Because we conclude that Thomas has a statutory right to the determination of paternity, it is unnecessary to address whether Thomas has a due process right to a paternity determination.

390

The underlying facts of this case are disputed. Thomas contends that he and Kimberly met in August or September 1988 and had a romantic relationship that lasted three or four months. He testified that during this time he and Kimberly had consensual sexual intercourse on many occasions. Kimberly testified that Thomas was not her boyfriend and they never had consensual intercourse. Instead, she testified that she was raped by Thomas during the conception period. She testified that she fears him for her own safety, and supported this with documents regarding Thomas' prior criminal contact with the police. She does not want Thomas to ever have contact with Baby Doe. Kimberly has never been married, but has a child with Lloyd P. Although she and Lloyd P. no longer reside together, he regularly keeps in touch with her and her two children, and both of the children refer to Lloyd P. as their father.

Thomas filed a petition for the determination of paternity and a motion for blood tests on September 7, 1990. Kimberly filed a motion to dismiss, alleging that a determination of Thomas' paternity was not in Baby Doe's best interests. The court denied the motion and on December 20, the court ordered Thomas, Kimberly, and Baby Doe to submit to blood tests to establish paternity.

On March 22, 1991, the court denied Kimberly's request for a pre-blood test hearing and again ordered that Kimberly submit herself and Baby Doe to blood tests.[2] On October 2, 1991, the court held Kimberly in contempt for refusing to comply with the order. On June 3, 1992, the court modified the order for blood

[2] Kimberly requested review of the order by petition for leave to appeal, and this court dismissed the appeal for lack of jurisdiction on July 23, 1991.

tests, so that the results would be confidential, and decided to hold an evidentiary hearing to establish whether a judicial determination of Thomas' paternity was in Baby Doe's best interests.[3] On June 29, 1992, the court stayed the contempt sanction.

On October 5 and 6, 1995, the court conducted the best interests hearing. The court found that Kimberly gave birth to a female child in October 1989, either Thomas or Lloyd P. is the biological father of the child, and the child interacts with Lloyd P. as though he is her father. Thomas has never had contact with Baby Doe, and Kimberly has never agreed to such contact. The child has been in Kimberly's continuous care and custody since birth.

The court took judicial notice of the fact that in 1992, a Minnesota court decided that Thomas engaged in sexually inappropriate behavior with his daughters, failed to admit his wrongdoing, and was unfit as a parent. The Minnesota court decided that it was not in the best interests of these children to reside with Thomas, and it would be detrimental to the daughters' well-being to be returned to Thomas' care.

Additionally, the court found that if Baby Doe is Thomas' child, her conception was the result of a nonconsensual sexual assault of Kimberly by Thomas. The court concluded as a matter of law that this finding alone was sufficient grounds for its decision that it was not in the best interests of Baby Doe that paternity proceedings go forward. Based also on the additional findings of fact, the court granted Kimberly's motion to dismiss and precluded the case from proceeding to paternity judgment.

---

[3] Thomas filed a petition for leave to appeal the June 3 order of the court.

On appeal, we first consider whether Thomas has a statutory right to the determination of his paternity of Baby Doe. The construction and interpretation of a statute and its application to the facts presents a question of law, which we review de novo. *State v. Keith*, 175 Wis. 2d 75, 78, 498 N.W.2d 865, 866 (Ct. App. 1993). As stated by our supreme court,

> The purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. In determining legislative intent, first resort is to the language of the statute itself. If the meaning of the statute is clear on its face, this court will not look outside the statute in applying it.

*In re P.A.K.*, 119 Wis. 2d 871, 878-79, 350 N.W.2d 677, 681 (1984) (citations omitted).

In order to determine whether Thomas has a statutory right to a paternity determination, we must interpret §§ 767.45 and 767.48, STATS.:

> **767.45 Determination of paternity. (1)** The following persons may bring an action or motion, including an action or motion for declaratory judgment, for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity . . . :
>
> . . . .
>
> (d) A man alleged or alleging himself to be the father of the child.
>
> . . . .
>
> (5)(a) In this subsection, "any alleged father" includes any male who has engaged in sexual intercourse with the child's mother during a possible time of conception of the child.

393

**767.48 Blood tests in paternity actions.**
(1)(a)   The court may, and upon request of a party shall, require the child, mother, any male for whom there is probable cause to believe that he had sexual intercourse with the mother during a possible time of the child's conception, or any male witness who testifies or will testify about his sexual relations with the mother at a possible time of conception to submit to blood tests. Probable cause of sexual intercourse during a possible time of conception may be established by a sufficient petition or affidavit of the child's mother filed with the court, or after an examination under oath of a complainant or witness, when the court determines such an examination is necessary.

We conclude that the statutory language is not ambiguous. It expressly provides the alleged father of a child the right to a determination of paternity, regardless of the circumstances of the case or the circumstances out of which paternity may have arisen. Because the legislature has not provided a best interests hearing, the court exceeded the legislatively mandated procedure when it ordered a best interests hearing as a prerequisite to blood tests. The trial court therefore lacked the statutory authority to conduct the best interests hearing and to dismiss the paternity proceedings.

We arrive at this conclusion based strictly on the procedures established in the relevant paternity statutes. Notwithstanding Kimberly's allegation of rape, the legislature has not provided that an alleged father has no standing in a paternity proceeding if he sexually assaulted the mother or that the court may dismiss paternity proceedings if it determines that

conception resulted from a sexual assault.[4] It is the role of the legislature, and not the courts, to legislate. *American Motors Corp. v. DILHR*, 101 Wis. 2d 337, 350, 305 N.W.2d 62, 68 (1981). Despite our opinion as to whether such a provision should exist, we cannot "change the wording of a statute to mean something which was not intended by the legislature or by the plain language used." *See id.* at 350, 305 N.W.2d at 68 (quoting *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969)).

We make no determination as to the fitness of Thomas to be a parent to Baby Doe because that is not the issue in this case. Instead, such an assessment is appropriate in the context of a proceeding to terminate Thomas' parental rights, and this decision in no way interferes with Kimberly's right to initiate or maintain such an action under ch. 48, STATS.

Next, we consider whether § 767.458(1m), STATS., violates Baby Doe's equal protection rights. This is an issue of first impression in Wisconsin. Kimberly and

---

[4] Kimberly and the guardian ad litem rely in part on *In re SueAnn A.M.*, 176 Wis. 2d 673, 500 N.W.2d 649 (1993), to support their argument that Thomas has no right to a paternity determination. *SueAnn* was a termination of parental rights case in which our supreme court, in relevant part, upheld the constitutionality of § 48.42(2m), STATS.: "**(2m)** Notice not required. Notice is not required to be given to a person who may be the father of a child conceived as a result of a sexual assault if a physician attests to his or her belief that a sexual assault has occurred." *SueAnn* is distinguishable because the court interpreted and applied a statutory subsection that pertains to termination of parental rights proceedings, which are not at issue in this case. Here, ch. 767, STATS., does not contain a provision prohibiting an a alleged father from obtaining a paternity determination if the conception resulted from a sexual assault.

the guardian ad litem argue that denying Baby Doe, who was born outside of a marriage, the right to a hearing to determine whether it is in her best interests to have a determination of paternity violates equal protection. The relevant statute is § 767.458(1m), which provides the following:

> In an action to establish the paternity of a child who was born to a woman while she was married, where a man other than the woman's husband alleges that he, not the husband, is the child's father, a party may allege that a judicial determination that a man other than the husband is the father is not in the best interest of the child. If the court . . . determines that a judicial determination of whether a man other than the husband is the father is not in the best interest of the child, no blood tests may be ordered and the action shall be dismissed.

█ The constitutionality of a statute presents a question of law, which we review de novo. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). Statutes are presumed constitutional and will be upheld "if there is any reasonable basis for the exercise of legislative power." *Id.* (citation omitted). "Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to the legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *Id.* at 129, 447 N.W.2d at 660 (quoting *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973)). "The court cannot reweigh the facts found by the legislature. If the court can conceive any facts on which the legislation could reasonably be based, it must hold the legislation constitutional." *Id.* (quoting

*State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 506, 261 N.W.2d 434, 441 (1978)).

The equal protection clause of the fourteenth amendment guarantees that "those who are similarly situated will be treated similarly." *Treiber v. Knoll*, 135 Wis. 2d 58, 68, 398 N.W.2d 756, 760 (1987). "The fact a statutory classification results in some inequity, however, does not provide sufficient grounds for invalidating a legislative enactment." *McManus*, 152 Wis. 2d at 130-31, 447 N.W.2d at 660. When the State is not discriminating based on a suspect classification, the classification will be upheld if it bears a rational relationship to a legitimate government interest. *Id.* Equal protection of the laws is denied only when the legislature makes irrational classifications. *Omernik v. State*, 64 Wis. 2d 6, 18-19, 218 N.W.2d 734, 742 (1974).

We review the merits of an equal protection challenge in two steps. *See Laskaris v. Wisconsin Dells*, 131 Wis. 2d 525, 534-35, 389 N.W.2d 67, 71 (Ct. App. 1986). "The first step in equal protection analysis is to identify the classes created by the challenged legislation. The next step is to determine whether a reasonable and practical basis exists for the classification." *Id.* Section 767.458(1m), STATS., distinguishes between children born inside and outside of wedlock. At first blush, one could easily come to the conclusion that children born outside of wedlock should not be treated differently because it is the child's best interests that are at issue. The legislature could have said that, but it did not. The question then becomes whether there is a legitimate rational basis for this distinction. The reasonable basis for the legislation is to protect children born into a marriage from the

397

interference of another man with the existing marital father-child relationship, and to preserve family unity.

The statute promotes the traditional respect for the sanctity of marriage and the preservation of the unitary family. *See Michael H. v. Gerald D.*, 491 U.S. 110, 123 (1989). As noted by the Court in *Michael H.*, these ideals have formed the basis for the outcomes of numerous cases in which the parental rights to a child have been determined. *Id.*; *see Lehr v. Robertson*, 463 U.S. 248, 261 (1983); *Caban v. Mohammed*, 441 U.S. 380, 389 (1979); *Quilloin v. Walcott*, 434 U.S. 246, 254-55 (1978); *Stanley v. Illinois*, 405 U.S. 645, 661 (1972). As summarized by the Court, "Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Michael H.*, 491 U.S. at 123-24 (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977)).

■

We are satisfied that the historic respect for the unitary family and the legislature's intent to preclude interference with an otherwise secure environment for the child are sufficient reasonable grounds for the legislature's classifications, and the legislative classification is germane to the purpose of the law. We therefore determine that § 767.458(1m), STATS., withstands the equal protection challenge. In summary, we conclude that Thomas has a statutory right to a paternity determination and that § 767.458(1m), STATS., applies only to children born to a woman while she was married and does not violate the principles of equal protection.

*By the Court.*—Judgment reversed and cause remanded for further paternity proceedings.