Beverly HAYEN, Petitioner-Appellant,

v.

Barry HAYEN, Respondent-Respondent.

Court of Appeals

*No. 99–1361. Submitted on briefs November 18, 1999.—Decided December 23, 1999.*

## 2000 WI App 29

(Also reported in 606 N.W.2d 606.)

447

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Julie L. Cabou*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Dennis M. McFarlin*, Friendship.

A nonparty brief was filed by *John S. Greene* and *Thomas Dosch,* assistant attorneys general and *James E. Doyle,* attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Beverly Hayen appeals an order granting a domestic abuse injunction against her husband, Barry Hayen. Beverly contends the circuit court erred when it refused her request for a two-year injunction and instead issued the injunction for only six months. She also argues that the circuit court erred when it declined to order the sheriff to assist in placing her in physical possession of her residence. We agree with both of Beverly's contentions. Accordingly, we reverse the order for an injunction and remand for the entry of an order consistent with the opinion which follows.

## BACKGROUND

¶ 2. Beverly petitioned the circuit court for a domestic abuse injunction against her husband, Barry, under § 813.12, STATS.[1] In her petition, she requested the court to enter a two-year injunction against Barry requiring him to (1) avoid her residence, (2) avoid contacting her, (3) refrain from committing acts of domestic abuse, and (4) avoid her place of work. She

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

also asked the court to "[d]irect the sheriff to assist in placing me in physical possession of my residence."

¶ 3. A family court commissioner heard Beverly's petition and issued a temporary restraining order against Barry, which included all of the relief for which Beverly had petitioned, including an order to the sheriff to assist in placing her in physical possession of her residence. Five days later, the circuit court conducted an injunction hearing, at which Beverly appeared pro se and Barry appeared with counsel. The court denied Beverly's request for a two-year injunction, and instead issued a six-month injunction which the court stated would apply to both Beverly and Barry. The court also declined to order the sheriff to assist in placing Beverly in physical possession of her residence.

¶ 4. Beverly subsequently wrote to the court and requested that it reconsider certain terms of the injunction order. Specifically, Beverly asked the court to reconsider its decisions (1) to issue a mutual injunction, (2) to order the injunction for only six months, and (3) to decline her request for the sheriff's assistance in obtaining physical possession of her residence. In her letter, Beverly told the court that Barry had changed the locks, preventing her from gaining access to the residence. The court scheduled a hearing on Beverly's request, at which she again appeared pro se and Barry appeared with counsel. A different judge presided over the second hearing.[2] Beverly informed the court that she had not yet commenced a divorce action but intended to do so "as soon as I can come up with the money" for an attorney. She also told the court that both she and Barry owned the residence.

---

[2] The first court hearing was conducted by Reserve Judge James Rice, who was apparently sitting in the absence of Judge Polivka, who presided at the second hearing.

¶ 5. During the hearing, the court clarified that only Barry was subject to the injunction. It declined, however, to extend the six-month time limit on the injunction, stating that "[a]lthough [Beverly] asked for two years, that is still a discretionary call by the court." The court also refused to order the sheriff to assist in placing Beverly in physical possession of her residence, concluding that physical possession of the home is a "divorce consideration" which should be decided in "family court." The court entered an amended order for an injunction which did not differ materially from the original order. Beverly appeals the amended order.

## ANALYSIS

¶ 6. This appeal involves issues of statutory interpretation, which are questions of law subject to our de novo review. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315, 317 (Ct. App. 1997). Our objective is to ascertain the intent of the legislature, and to discern it, we look first to the plain language of the statute. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563, 566 (1997). If the plain language of the statute clearly sets forth the legislature's intent, we look no further and simply apply the statute to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996).

¶ 7. Beverly contends first that the trial court erred in refusing her request that the injunction be effective for two years. Beverly bases her contention on the language of § 813.12(4)(c), STATS., which provides that an injunction issued under the statute is "effective according to its terms, for the period of time that the petitioner requests," but not longer than two years.

Beverly argues that under the plain language of this paragraph, the circuit court was required to grant the injunction for two years, as she requested. Barry responds, however, that the court retains discretion under § 813.12(4)(c) to determine the appropriate time period for the injunction.

¶ 8. We have already resolved this issue in Beverly's favor. *See Laluzerne v. Stange*, 200 Wis. 2d 179, 546 N.W.2d 182 (Ct. App. 1996). We concluded in *Laluzerne* that the language of § 813.12(4)(c), STATS., "clear[ly] and unambiguous[ly]" establishes that a domestic abuse injunction is "effective for the period of time the petitioner requests." *Laluzerne* at 188, 546 N.W.2d at 186. Thus, once a circuit court determines that it will issue a domestic abuse injunction,[3] the court is required to issue the injunction for the length of time the petitioner requests. Beverly petitioned the court for a two-year injunction against her husband Barry, and the circuit court was required under the statute to grant relief for two years or not at all.

¶ 9. Barry argues, however, that this conclusion renders the statute constitutionally infirm.[4] He begins by noting that an injunction is an equitable remedy, and that courts inherently retain discretion to grant

---

[3] The court may grant a domestic abuse injunction if it "finds reasonable grounds to believe that the respondent has engaged in, or based on prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." Section 813.12(4)(a)3, STATS.

[4] We did not address "the constitutionality of a statute that does not give the trial court discretion to determine the appropriate time period for the injunction" in *Laluzerne v. Stange*, 200 Wis. 2d 179, 546 N.W.2d 182 (Ct. App. 1996), because the parties did not argue the issue. *See id.* at 188 n.2, 546 N.W.2d at 186.

and fashion equitable remedies. He contends that the duration of a domestic abuse injunction must therefore be committed to the discretion of the circuit court. According to Barry, if § 813.12(4), STATS., is interpreted so as to remove this discretion, the statute is unconstitutional. Specifically, he contends that § 813.12(4), if interpreted as unequivocally requiring the circuit court to grant a domestic abuse injunction for the period of time that a petitioner requests, violates a respondent's rights to a jury trial, to due process, and to equal protection of the law. We disagree on all three points.

¶ 10. Whether a statute is unconstitutional is also a question of law which we decide de novo, and the party who makes the challenge bears the burden of showing that the statute is unconstitutional "beyond a reasonable doubt." *See State v. Akins*, 198 Wis. 2d 495, 502–03, 544 N.W.2d 392, 395 (1996). Barry argues first that, if the circuit court has no discretion to determine the duration of an injunction, the statute converts what is otherwise an equitable proceeding into an "action at law." He asserts further that all "actions at law" must be tried to a jury if the defendant/respondent requests, and that he was therefore entitled to have a jury determine whether Beverly had proven the grounds for issuing a domestic abuse injunction. The right to a jury trial, however, attaches only to actions at law that were "known to the common law in 1848." *See State v. Ameritech Corp.*, 185 Wis. 2d 686, 698, 517 N.W.2d 705, 709 (Ct. App. 1994). Thus, even if we were to accept Barry's premise that our interpretation of § 813.12(4)(c), STATS., converts the proceeding into an "action at law," because domestic abuse injunction proceedings were not "known to the common law in 1848,"

respondents in these type of proceedings are not constitutionally entitled to a jury trial.

¶ 11. Barry next contends that § 813.12(4), STATS., violates his constitutional right to equal protection because it discriminates against respondents in domestic abuse injunction proceedings. Specifically, he asserts that respondents in domestic abuse injunction proceedings are denied "the right to have the term of their injunction fashioned by the [circuit court] judge," whereas respondents in other types of injunction proceedings are accorded that right. According to Barry, the statute, under our interpretation, violates the equal protection clause's guarantee that "those who are similarly situated will be treated similarly." *See Thomas M.P. v. Kimberly J.L.*, 207 Wis. 2d 388, 397, 558 N.W.2d 897, 901 (Ct. App. 1996) (citation omitted). We disagree.

¶ 12. The equal protection clause does not prohibit the legislature from enacting statutes that treat certain categories of people differently than others. *See Village of Oregon v. Waldofsky*, 177 Wis. 2d 412, 418, 501 N.W.2d 912, 914 (Ct. App. 1993). A statute will be upheld as constitutional as long as the classification has a "reasonable basis" and "rests upon some ground of difference that bears a fair and substantial relation to" the purpose behind the statute's enactment. *Id.* A statute violates the equal protection clause only if the legislature has made an irrational or arbitrary classification. *See GTE Sprint Communications Corp. v. Wisconsin Bell, Inc.*, 155 Wis. 2d 184, 193, 454 N.W.2d 797, 801 (1990). Moreover,

> [i]f any state of facts can reasonably be conceived to justify a statutory discrimination, it will not be set

aside. If the legislative body has not set forth its rationale for creating a classificatory scheme it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination.

*Schramek v. Bohren*, 145 Wis. 2d 695, 711, 429 N.W.2d 501, 507 (Ct. App. 1988) (citation omitted).

¶ 13. We conclude that § 813.12(4), STATS., does not violate Barry's right to equal protection because there is a reasonable basis for the legislature to treat parties in domestic abuse injunction proceedings differently than parties in other types of injunction proceedings. We noted in *Schramek* that, in enacting § 813.12, the legislature acknowledged the unique nature of the crime of domestic violence, and it recognized that domestic abuse victims need particular protective measures:

> In 1979, our legislature acknowledged that domestic abuse was a serious statewide social concern which necessitated a comprehensive and informed response. Sec. 1, ch. 111, Laws of 1979. It recognized the critical need for specialized assistance, not only to the victims of domestic abuse but also to the abusers. More resources had to be marshaled and new methods formulated to meet the challenge of this tragic social phenomenon. *Id.* As an additional means of alleviating the problem, the legislature enacted sec. 813.12, STATS. *See* sec. 19, 1983 Wis. Act 204.
>
> . . . .
>
> [T]he state legislature created protective measures for those individuals who, as a member of either an adult family or a household, were domestically abused by other family or household members. Only

individuals within precise settings who were victims of clearly defined physical abuse were deemed to receive protection by state action. The legislature sought to help both the abused and the abusers. The uniqueness of this relationship is obvious. Because of the sensitive nature of the circumstances in which this conduct arises, the procedural mechanisms were created to alleviate the inherent problem of preventing further abuse of family or household members. There is a reasonable basis for the legislature to create special procedures for these circumstances. . . .

*Schramek*, 145 Wis. 2d at 702, 711, 429 N.W.2d at 503–04, 507.

¶ 14. We concluded in *Schramek* that the "sensitive nature" of the circumstances in which domestic abuse issues arise provides a reasonable basis for the legislature to treat respondents in domestic abuse injunction proceedings differently than defendants charged with battery in criminal proceedings. *See id.* at 710–11, 429 N.W.2d at 507. We now conclude that the nature of these circumstances also provides a reasonable basis for the legislature's decision to permit a domestic abuse victim, rather than the court, to determine the duration of protection from an abuser that may be necessary for the victim's health and well-being.

¶ 15. Finally, Barry asserts that if § 813.12(4), STATS., requires that the duration of a domestic abuse injunction must be determined solely by a petitioner's request, the statute violates substantive due process because it removes the circuit court's discretion to fashion injunctive relief on a case-by-case basis. Barry contends that a statute which essentially mandates a two-year injunction and does not allow a court to deter-

mine the amount of time necessary to reasonably protect a domestic abuse petitioner is arbitrary and capricious. Further, Barry contends that this statute does not bear a "reasonable and rational relationship" to the purpose or objective of its enactment. *See Reginald D. v. State*, 193 Wis. 2d 299, 307–08, 533 N.W.2d 181, 185 (1995) (citation omitted).

¶ 16. Like his equal protection claim, Barry's substantive due process claim is without merit. We have discussed above why the legislature could reasonably conclude that parties in domestic abuse proceedings should be treated differently than parties in other actions for equitable relief. Those same considerations demonstrate that the procedures set forth in § 813.12, STATS., bear a rational relationship to the purpose behind its enactment. *See Schramek*, 145 Wis. 2d at 711–12, 429 N.W.2d at 507 ("Because of the sensitive nature of the circumstances in which this conduct arises," the legislature found it necessary to create "special procedures" to prevent "further abuse of family or household members."). The legislature concluded, for example, that the nature of the circumstances made it necessary for a domestic abuse victim to be able to obtain relief promptly, and to do so on a relatively low threshold of proof. *See* § 813.12(2m), (3) and (4), STATS.; and see note 3, above. Permitting the victim to specify the duration of the protection to be afforded him or her, not exceeding two years, is also responsive to the special circumstances surrounding domestic abuse, and hence is neither arbitrary nor capricious.

¶ 17. A final issue remains. Beverly contends that the circuit court erred when it refused to order the sheriff to assist in placing her in physical possession of her residence. She again argues that the plain lan-

guage of the statute requires the court to order this assistance, and again, we agree. We conclude that § 813.12(6), STATS., plainly requires the court, if it elects to grant an injunction and the petitioner so requests, to direct the sheriff's assistance in placing the petitioner in physical possession of his or her residence.

¶ 18. Section 813.12(6)(a), STATS., states that "[i]f an order is issued under this section, upon request by the petitioner the court or family court commissioner *shall* order the sheriff to accompany the petitioner and assist in placing him or her in physical possession of his or her residence. . . ." (emphasis added). In interpreting statutory language, the general rule is that the word "shall" is presumed to be mandatory. *See Karow v. Milwaukee County Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214, 217 (1978). Barry offers no reason why the general rule should not apply to § 813.12(6)(a), STATS., and we conclude that the paragraph creates a mandate upon the court.[5]

¶ 19. We agree with the circuit court's observation that physical possession of the parties' residence is a "divorce consideration" that may be decided in "family court." We also agree with Beverly, however, that §§ 813.12(2)(b) and 767.23(1m), STATS., indicate the

---

[5] The sum total of Barry's argument on this issue is as follows. Whether an order for a respondent to "avoid the petitioner's residence" should be included in an injunction under § 813.12(4), STATS., is discretionary with the court. And, "[i]f the trial court declines to order injunctive relief imposing a restriction upon respondent to avoid petitioner's residence, then the enforcement assistance provided at sec. 813.12(6)(a) simply is not applicable." Assuming without deciding that these propositions are correct, they are irrelevant on the present facts: the trial court in this case *did* order Barry to avoid Beverly's residence as a part of the injunction it granted.

legislature's intent "not to mix divorce relief with remedies designed specifically to end abuse," and vice versa.[6] That is, the determinations made and the relief granted under § 813.12, STATS., are separate and distinct from determinations and relief under ch. 767, but the statutes are not mutually exclusive. Nothing in § 813.12, or in this opinion, should be viewed as interfering with a family court's authority to determine which party should have temporary possession of the residence during the pendency of a divorce action, if one is commenced, or how the parties' property might ultimately be divided upon divorce. *See* §§ 767.23(1)(g) and 767.255, STATS.

██

¶ 20. At the time of the hearings on Beverly's petition in this action, however, no family court had entered any order regarding occupancy of Barry and Beverly's residence, nor had either party commenced a divorce action. Beverly concedes, and we agree, that if she were restored to physical possession of the parties'

---

[6] Section 813.12(2)(b), STATS., provides as follows:

> A petition may be filed in conjunction with an action affecting the family commenced under ch. 767, but commencement of an action affecting the family or any other action is not necessary for the filing of a petition or the issuance of a temporary restraining order or an injunction. A judge or family court commissioner may not make findings or issue orders under s. 767.23 or 767.24 while granting relief requested only under this section. . . .

Section 767.23(1m), STATS., in turn, provides:

> If a family court commissioner believes that a temporary restraining order or injunction under s. 813.12 is appropriate in an action, the court commissioner shall inform the parties of their right to seek the order or injunction and the procedure to follow. On a motion for such a restraining order or injunction, the family court commissioner shall submit the motion to the court within 5 working days.

residence with the sheriff's assistance under § 813.12, STATS., and a family court were subsequently to award possession of the residence to Barry, Beverly "would then have to make arrangements to leave." The injunction, if still in effect, would require Barry to avoid Beverly's new residence. Similarly, if a family court had awarded possession of the parties' residence to Barry prior to the injunction hearings under § 813.12, those premises would no longer constitute Beverly's residence, and she would have no right under § 813.12(6) to the sheriff's assistance in obtaining physical possession of it.

## CONCLUSION

¶ 21. We conclude that the circuit court erred in refusing to issue an injunction for the length of time that Beverly requested, and in refusing to order the sheriff to assist in placing Beverly in physical possession of her residence. Accordingly, we reverse the circuit court's injunction order and remand for the entry of an order consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.