COURT OF APPEALS
DECISION
DATED AND FILED

May 27, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP923**

STATE OF WISCONSIN

Cir. Ct. No. 2025CV337

IN COURT OF APPEALS
DISTRICT III

PETITIONER,

    PETITIONER-RESPONDENT,

V.

ONYEISI STEPHEN OGBOMEH,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: JOHN P. ZAKOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Onyeisi Stephen Ogbomeh appeals from a domestic abuse injunction entered against him for the protection of the

petitioner-respondent, Jane.[1]  For the reasons that follow, we reject Ogbomeh's arguments and affirm.

## BACKGROUND

¶2  On March 5, 2025, Jane filed a petition seeking a temporary restraining order and domestic abuse injunction against Ogbomeh.  In the petition, Jane alleged that she went to Ogbomeh's home on March 1, 2025, for their first date.  Although they were supposed to go out to dinner, Jane alleged that when she entered Ogbomeh's home, he sexually assaulted her by touching her breasts and vagina without her consent.  Following a hearing, a court commissioner granted Jane a four-year domestic abuse injunction.

¶3  Ogbomeh sought de novo review of the court commissioner's decision.  At the de novo hearing, Jane testified that she met Ogbomeh on February 21, 2025, through "the Facebook Dating app."  They messaged and video-chatted for nine days, during which "deep conversations, definitely flirting happened," and Ogbomeh "mentioned … marriage."  Ultimately, they made plans for Jane to travel to Illinois on March 1, 2025, where she would meet Ogbomeh at his home and they would then go out to dinner.

¶4  Jane testified that as soon as she entered Ogbomeh's home, he grabbed her purse and hugged her without her consent.  Ogbomeh then started

---

[1]  "Petitioner" has been substituted for the petitioner-respondent's name in the caption for this appeal.  *See* WIS. STAT. RULE 809.81(9) (2023-24).  For ease of reading, and to protect confidentiality, we refer to the petitioner-respondent using a pseudonym.  All references to the Wisconsin Statutes are to the 2023-24 version.

We note that although Ogbomeh was represented by counsel in the circuit court, both parties are self-represented on appeal.

kissing Jane and "touching [her] butt, trying to lift [her] dress," but she "pushed his hand away" and "told him no." Jane "was trying to figure out how to make this stop," so she walked away from Ogbomeh and asked him about his home. However, Ogbomeh started touching and kissing her and "doing kind of all the same things again." Jane pushed Ogbomeh away "and said, you know, I'm not comfortable with this."

¶5      Jane testified that she walked away from Ogbomeh and tried to distract him by asking him about a fish tank in his home, but Ogbomeh again initiated physical contact with her. According to Jane, this time, Ogbomeh "was much more aggressive, kissing me, sucking on my neck. He got my bra off, he had his hands in my pants." Jane later clarified that Ogbomeh "put his hand in my pants and was putting his hand in my vagina." Jane "said no, no, no. I'm not comfortable with this," and then grabbed her bra and purse and went into a bathroom. When Ogbomeh went upstairs to get dressed for dinner, Jane left his home, went into her vehicle, and locked the doors. She then messaged Ogbomeh, stating that she felt unsafe and would not be going to dinner with him. Ogbomeh did not reply to that message.

¶6      The following day, Jane noticed that she had a bruise on her neck, which she attributed to Ogbomeh "sucking on [her] neck." A photograph of the bruise was introduced into evidence. Jane told the circuit court that the bruise "was painful." She also testified that she "never gave [Ogbomeh] consent … to touch [her]." In addition, she stated that she had concerns for her safety because Ogbomeh knew her address and had told her that he had a weapon.

¶7      On cross-examination, Jane conceded that Ogbomeh had not contacted her since the incident at his home. She stated, however, that she had

"blocked him on all platforms," so he may have tried to contact her without her knowing of it.

¶8      During his testimony, Ogbomeh confirmed that the entirety of his relationship with Jane occurred during the "nine-day span ending on" March 1, 2025. He denied that he and Jane were in a "dating relationship" during those nine days. He testified that Jane was "very excited" to come to his home, that he never threatened or assaulted her, and that there was no "unwanted physical contact" between them.

¶9      Ogbomeh further testified that on the day Jane came to his home, "the plan was that she was going to stay the night and [they] were going to go to church the next day." According to Ogbomeh, Jane was the one who initiated the physical contact when she arrived at his home by hugging him, and they were both "on each other's neck." Ogbomeh testified that Jane abruptly left his home after seeing that she had a missed call from her son.

¶10     Following the parties' testimony, the circuit court concluded that Ogbomeh had committed domestic abuse against Jane. The court stated that it accepted Jane's "version of what happened"—namely, that there was "a sexual assault that took place." In particular, the court credited Jane's testimony that Ogbomeh had "put his hand down her pants and … put his fingers or his hand in her vagina," which the court stated would qualify as a third-degree sexual assault. The court also stated that the bruise on Jane's neck would "probably arguably" qualify as a "physical injury."

¶11     The circuit court next concluded that Jane and Ogbomeh were in a "dating relationship" when the abuse occurred. In support of that conclusion, the

court cited the nine-day period of communications between the parties, which led to Jane traveling all the way to Ogbomeh's home in Illinois to meet him for a date.

¶12     Accordingly, the circuit court concluded that the statutory requirements for the issuance of a domestic abuse injunction had been satisfied. The court determined, however, that under the circumstances, a one-year injunction—retroactive to the date of the injunction issued by the court commissioner—would be "more than sufficient." The court therefore entered a one-year domestic abuse injunction with an expiration date of March 21, 2026. Ogbomeh now appeals from that injunction.[2]

## DISCUSSION

### I. Jurisdiction

¶13     On appeal, Ogbomeh argues that the circuit court lacked "subject matter jurisdiction" to issue a domestic abuse injunction. As our supreme court has recognized, however, "[c]ircuit courts in Wisconsin are constitutional courts with general original subject matter jurisdiction over 'all matters civil and criminal.'" ***Village of Trempealeau v. Mikrut***, 2004 WI 79, ¶1, 273 Wis. 2d 76, 681 N.W.2d 190 (quoting WIS. CONST. art. VII, § 8). "Accordingly, a circuit court is never without subject matter jurisdiction." ***Id.***

---

[2] We note that, in her respondent's brief, Jane argues that the circuit court erred by reducing the length of the injunction from four years to one year. We agree with Jane that the court erred in that respect. Once a court decides to issue a domestic abuse injunction, it is "required to issue the injunction for the length of time the petitioner requests," ***Hayen v. Hayen***, 2000 WI App 29, ¶8, 232 Wis. 2d 447, 606 N.W.2d 606 (1999), and Jane requested a four-year domestic abuse injunction. However, because Jane failed to file a notice of cross-appeal, as required by WIS. STAT. RULE 809.10(2)(b), she cannot challenge the court's decision to reduce the length of the injunction on appeal.

¶14 Additionally, to the extent Ogbomeh believes that the circuit court lacked subject matter jurisdiction because the alleged domestic abuse occurred in another state, WIS. STAT. § 813.015 expressly states that in an action on a petition for a domestic abuse injunction, "the court has jurisdiction of the subject matter under [WIS. STAT. §] 801.04 regardless of whether the alleged abuse or harassment occurred within the state." We therefore reject Ogbomeh's claim that the court lacked subject matter jurisdiction.[3]

¶15 It appears Ogbomeh may also intend to argue that the circuit court lacked personal jurisdiction over him under WIS. STAT. § 801.05(11m). We conclude, however, that Ogbomeh has waived any objection to personal jurisdiction.

¶16 A court of this state may exercise personal jurisdiction "over any person who appears in the action and waives the defense of lack of jurisdiction over his or her person as provided in [WIS. STAT. §] 802.06(8)." WIS. STAT. § 801.06. Under § 802.06(8)(a), "[a] defense of lack of jurisdiction over the person … is waived" if it is not raised in a motion or responsive pleading. Ogbomeh never raised any argument in the circuit court, either by motion or responsive pleading, that the court lacked personal jurisdiction over him.

---

[3] Ogbomeh does not develop any argument that the circuit court lacked competency to exercise its subject matter jurisdiction, and we will not abandon our neutrality to develop such an argument for him. *See Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶¶8-9, 273 Wis. 2d 76, 681 N.W.2d 190 (distinguishing between subject matter jurisdiction and competency); *see also Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating that we will not abandon our neutrality to develop arguments for a party). Regardless, Ogbomeh forfeited any argument regarding competency by failing to raise that issue in the circuit court. *See Mikrut*, 273 Wis. 2d 76, ¶¶30, 38 (explaining that challenges to a circuit court's competency are forfeited if not raised in the circuit court).

Consequently, Ogbomeh has waived his right to raise that argument on appeal, and we will not address it further.

## II. Sufficiency of the evidence to establish "domestic abuse"

¶17 Ogbomeh next argues that the circuit court erred by issuing a domestic abuse injunction because the evidence was insufficient to establish "domestic abuse," as that term is defined in WIS. STAT. § 813.12(1)(am).

¶18 Whether to grant a domestic abuse injunction presents a mixed question of fact and law. *Cf. **Welytok v. Ziolkowski***, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359 (articulating the standard for reviewing the issuance of a harassment injunction). "We will not set aside the circuit court's factual findings unless they are clearly erroneous." ***Id.*** (citing WIS. STAT. § 805.17(2)); *see also **Wittig v. Hoffart***, 2005 WI App 198, ¶19, 287 Wis. 2d 353, 704 N.W.2d 415. However, whether the facts found by the circuit court are sufficient to satisfy the statutory standard for the issuance of a domestic abuse injunction is a question of law that we review independently. *See **Welytok***, 312 Wis. 2d 435, ¶23.

¶19 A circuit court may issue a domestic abuse injunction if, following a hearing, the court "finds reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." WIS. STAT. § 813.12(4)(a)3. As relevant here, "domestic abuse" is defined to include a violation of WIS. STAT. § 940.225(3)—i.e., third-degree sexual assault—if that act was committed "by an adult against an adult with whom the individual has or had a dating relationship." Sec. 813.12(1)(am)3. "Reasonable grounds" exist when it is "more likely than not that a specific event has occurred or will occur." Sec. 813.12(1)(cg).

¶20    In this case, the circuit court credited Jane's testimony regarding the events that occurred when she arrived at Ogbomeh's home—specifically, that Ogbomeh sexually assaulted Jane by "put[ting] his hand down her pants and … put[ting] his fingers or his hand in her vagina." The court's finding in that regard is not clearly erroneous. *See Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (explaining that a finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence); *see also State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony."). Jane's testimony was sufficient to support the court's determination that Ogbomeh's actions toward Jane constituted a third-degree sexual assault. *See* WIS. STAT. § 940.225(3)(a) (stating that third-degree sexual assault includes "sexual intercourse with a person without the consent of that person"), (5)(c) (defining "sexual intercourse" to include "any … intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction").

¶21    The evidence was also sufficient to support the circuit court's determination that Jane and Ogbomeh were in a "dating relationship" at the time of the assault.

> "Dating relationship" means a romantic or intimate social relationship between 2 adult individuals but "dating relationship" does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context. A court shall determine if a dating relationship existed by considering the length of the relationship, the type of the relationship, and the frequency of the interaction between the adult individuals involved in the relationship.

WIS. STAT. § 813.12(1)(ag).

¶22    The evidence introduced at the injunction hearing established that Jane and Ogbomeh met on a dating app. They messaged and video-chatted for nine days. According to Jane, those conversations were flirtatious in nature, and Ogbomeh even "mentioned … marriage." During their conversations, the parties made plans for Jane to travel from Wisconsin to Ogbomeh's home in Illinois so that they could go out to dinner together—i.e., go on a date. Ogbomeh also testified that "the plan" was for Jane to stay overnight at his home and attend church with him in the morning. Additionally, Jane testified that when she arrived at Ogbomeh's home, he immediately began hugging and kissing her, suggesting that he understood their relationship to be romantic in nature. This evidence was sufficient to support a conclusion that Jane and Ogbomeh had "a romantic or intimate social relationship" that was not merely "a casual relationship or an ordinary fraternization between 2 individuals in a business or social context." *See id.*

¶23    Ogbomeh argues that the term "dating relationship" "does not encompass a brief, online relationship or a single, failed first date." He emphasizes that he and Jane "met online and communicated for only nine days … before their single in-person meeting." Ogbomeh cites no legal authority, however, in support of the proposition that the circumstances of this case—which involved a period of online communication followed by a date—are insufficient to satisfy the statutory definition of a "dating relationship." While WIS. STAT. § 813.12(1)(ag) does direct a court to consider "the length of the relationship, the type of the relationship, and the frequency of the interaction between the adult individuals involved in the relationship," nothing in the statute precludes a court

from concluding that a dating relationship existed under the circumstances presented here.

¶24 In summary, the evidence presented at the injunction hearing was sufficient to establish that Jane and Ogbomeh were in a dating relationship and that Ogbomeh committed a third-degree sexual assault against Jane. As such, the circuit court properly determined that there were reasonable grounds to believe Ogbomeh had engaged in domestic abuse of Jane, as required for the issuance of a domestic abuse injunction. *See* WIS. STAT. § 813.12(4)(a)3.

### III. Lack of an "imminent threat" to Jane

¶25 Finally, Ogbomeh asserts that the circuit court erred by issuing a domestic abuse injunction because he "posed no 'imminent threat' to [Jane] as required by law." Citing WIS. STAT. §§ 813.12 and 947.013(1)(b), Ogbomeh contends that "[a] domestic abuse injunction requires a finding of a 'credible threat to the physical safety of another' as defined by Wisconsin law." He argues that there is no evidence of a "credible threat" in this case because he and Jane "live approximately 168 miles and three hours away from each other, in different [s]tates"; he has not attempted to contact Jane since their single meeting; he has a "documented medical condition" that prevents him from driving long distances; and he is "a law-abiding citizen with a clean record and a professional career as a Family Nurse Practitioner."

¶26 This argument fails because the statutes that Ogbomeh cites do not support his assertion that a domestic abuse injunction requires a finding of a "credible threat to the physical safety of another." Nothing in WIS. STAT. § 813.12 requires such a finding. WISCONSIN STAT. § 947.013(1)(b), which is part of the criminal harassment statute, simply defines the term "credible threat" for purposes

of that statute, and Ogbomeh does not explain why § 947.013 has any relevance to this case, where Jane sought a domestic abuse injunction under § 813.12. Because Ogbomeh has failed to cite any legal authority that supports his argument that a finding of a credible or imminent threat is required before a court may issue a domestic abuse injunction, we decline to address that issue further.[4] *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Ogbomeh does not cite—or develop any argument based on—WIS. STAT. § 813.12(4)(aj), which states that when determining whether to issue a domestic abuse injunction, a court "shall consider the potential danger posed to the petitioner and the pattern of abusive conduct of the respondent but may not base his or her decision solely on the length of time since the last domestic abuse or the length of time since the relationship ended." Again, we will not abandon our neutrality to develop such an argument on Ogbomeh's behalf. *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.