Lana C. WITTIG, Petitioner-Respondent,

v.

Brian K. HOFFART, Respondent-Appellant.

Court of Appeals

*No. 2004AP1653. Submitted on briefs August 2, 2005.*
*—Decided August 23, 2005.*

2005 WI App 198

(Also reported in 704 N.W.2d 415.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David A. Nelson* of *Doherty Law Offices, S.C.*, of West Bend.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James K. Jaskolski* of *Jaskolski & Jaskolski, S.C.*, of Greenfield.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Brian K. Hoffart appeals a domestic-abuse injunction in favor of Lana C. Wittig. *See* Wis. Stat. § 813.12.[1] Hoffart and Wittig are married but estranged. Hoffart claims that the trial court erred in considering facts underlying an earlier domestic-abuse injunction entered against him on Wittig's petition that Wittig later had vacated. Hoffart also claims that there was insufficient evidence to support the trial court's conclusions that an injunction was warranted. We affirm.

## I.

¶ 2. Hoffart and Wittig were married in early November, 2001. According to Wittig's testimony at the injunction hearing, Hoffart turned violent almost immediately, in January, 2002. She told the trial court that "he would always yell in my face in a very threatening way," and that the first time he hurt her was when he grabbed her "head and shook," causing her pain in her "new ear-piercing." According to her testimony, he con-

---

[1] Lana Wittig's petition for a domestic-abuse injunction was before the trial court on its *de novo* review of a court commissioner's order dismissing her petition. *See* Wis. Stat. § 757.69(8) ("Any decision of a circuit court commissioner shall be reviewed by the judge of the branch of court to which the case has been assigned, upon motion of any party. Any determination, order, or ruling by a circuit court commissioner may be certified to the branch of court to which the case has been assigned, upon a motion of any party for a hearing de novo.").

tinued his abuse until she moved out in early February, 2002, some three months after they were married:

> He would push me down. He would drag me. He would physically try to remove me out of the condo in the middle of the night. He would suffocate me with a pillow. He would put his hands around my neck. Verbal abuse. He would touch me inappropriately ... [i]n a sexual manner.

She also testified that after she told him in early November, 2002, that she was pregnant with their child, they got into another argument and "he ended up by kind of sitting on me, and he had his hands around my neck ... squeezing my neck, because I was trying to leave, and he wouldn't let me leave."

¶ 3. Ultimately, she sought a domestic-abuse injunction, which was granted by a circuit court commissioner in December, 2002. Hoffart did not seek review of the injunction order. On April 18, 2003, the injunction was vacated on Wittig's request. She told the trial court at the hearing in this appeal that she agreed to the vacatur because her therapist had suggested it in order to facilitate their counseling sessions, and that she did not believe that she then needed to fear Hoffart because she thought that "[a]t that time he did not know where I lived." Wittig explained at the hearing on this appeal that she now wanted the trial court to issue a new injunction because Hoffart's sister told her that Hoffart had been stalking Wittig after April 18, 2003, and had broken into Wittig's apartment with keys he had taken from Wittig's purse when they both worked at the same hospital.[2] Wittig also told the trial court that he had

---

[2] Wittig's testimony as to what Hoffart's sister told her was, of course, hearsay. *See* Wis. Stat. Rule 908.01(3) (" 'Hearsay' is a statement, other than one made by the declarant while testify-

repeatedly threatened to kill her. Wittig said that Hoffart's threats scared her, explaining that "he said it many times before amongst other threats, and he has made good on his threats in the past, so I was definitely afraid of him and still continue to be." She admitted, however, that Hoffart never hit her after vacatur of the December, 2002, injunction on April 18, 2003, and that she did not call the police to report those threats.

¶ 4. Hoffart's sister also testified, albeit as, according to what she told the trial court, an unwilling witness whom Wittig had subpoenaed. She related how Hoffart told her that he had taken Wittig's keys from Wittig's locker at the hospital, and that she was with him one time when he went into Wittig's apartment alone when Wittig was not there. As for Hoffart's attitude toward Wittig, his sister recounted how he said that Wittig was "a 100–pound weakling and he'd peeled her off the door one day," commenting to her, as she related it, "look how little she is and look how big I am." She reflected that she wanted Hoffart to "get anger management" counseling.

¶ 5. Hoffart testified at the hearing and denied ever threatening or hurting Wittig except for the time when he grabbed her head and, according to him, inadvertently touched the sore spot where she had her ear pierced: "When I held her head in my hands, I was going to kiss her[,] actually. She had gotten a couple of months before a left ear-piercing that was not in the lobe . . . And it had taken a couple of months actually to

---

ing at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Hoffart did not object to this aspect of Wittig's testimony, and thus the trial court was permitted to consider it. *See State v. Jenkins*, 168 Wis. 2d 175, 203, 483 N.W.2d 262, 273 (Ct. App. 1992) ("Unobjected-to-hearsay is admissible as substantive evidence.").

heal. It had not been healing well." He also denied going into her locker at the hospital and taking her keys, or going into her apartment without her permission.

¶ 6. The trial court received into evidence two earlier injunction orders that had been entered against Hoffart. One was on the petition of a woman whom he had dated, and the other was on the petition of his son's mother.

¶ 7. As noted, the trial court granted Wittig's petition for a domestic-abuse injunction. It made extensive and comprehensive findings of fact in its oral decision. The trial court credited the testimony of both Wittig, which it called, "compelling," and Hoffart's sister. In contrast, it found Hoffart to be "[t]otally unworthy of belief." Specifically, as material to its decision to grant Wittig's petition, the trial court found that even though Hoffart had not hit Wittig after the April 18, 2003, vacatur of the December, 2002, domestic-abuse injunction, he "threatened to harm her, threatened to kill her multiple times since April 18th, 2003," and that they were the requisite "true threats," rather than mere hyperbole.

## II.

¶ 8. The trial court issued the domestic-abuse injunction under WIS. STAT. § 813.12. As material here, the statute provides that "[a] judge or circuit court commissioner may grant an injunction" if he or she finds, "[a]fter hearing . . . reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." Sec. 813.12(4)(a)3. "Domestic abuse," is defined by the statute as:

[A]ny of the following engaged in by an adult family member or adult household member against another adult family member or adult household member, by an adult caregiver against an adult who is under the caregiver's care, by an adult against his or her adult former spouse, by an adult against an adult with whom the individual has or had a dating relationship, or by an adult against an adult with whom the person has a child in common:

1. Intentional infliction of physical pain, physical injury or illness.

2. Intentional impairment of physical condition.

3. A violation of s. 940.225 (1), (2) or (3).

5. A violation of s. 943.01, involving property that belongs to the individual.

6. A threat to engage in the conduct under subd. 1., 2., 3., or 5.

Sec. 813.12(1)(am).[3] WISCONSIN STAT. § 940.225(1), (2) or (3) makes criminal sexual assault in the first, second, and third degrees, respectively. WISCONSIN STAT. § 943.01 makes criminal the intentional "damage to any physical property of another without the person's consent." The domestic-abuse-injunction statute also provides:

In determining whether to issue an injunction, the judge or circuit court commissioner shall consider the potential danger posed to the petitioner and *the pattern of abusive conduct* of the respondent but may not base his or her decision solely on the length of time since the last domestic abuse or the length of time since the relationship ended.

Sec. 813.12(4)(aj) (emphasis added).

[3] There is no WIS. STAT. § 813.12(1)(am)4.

¶ 9. As we have seen, in issuing the domestic-abuse injunction against Hoffart, the trial court determined that his threats against Wittig were, based on what it determined was Hoffart's pattern of abusive conduct, "true threats" and justified issuance of the injunction under the definition of domestic abuse under WIS. STAT. § 813.12(1)(am)6. Hoffart claims on this appeal that the trial court should not have considered any of his acts against Wittig that underlay the December, 2002, domestic-abuse injunction, which, as we have seen, was vacated on April 18, 2003, at Wittig's request. Hoffart also contends that there was insufficient evidence for the trial court to conclude that his threats were "true threats." We address these contentions in turn.

A. *Acts underlying the December, 2002, domestic-abuse injunction.*

■

¶ 10. Hoffart argues that Wittig's successful request on April 18, 2003, to vacate the December, 2002, domestic-abuse injunction prevented the trial court, under an issue-preclusion theory, from considering any of the facts underlying that domestic-abuse injunction. Whether issue-preclusion applies is a question of law subject to our *de novo* review. *See Michelle T. v. Crozier*, 173 Wis. 2d 681, 686–687, 495 N.W.2d 327, 329 (1993) (application of issue preclusion is subject to appellate court's *de novo* review). We agree with the trial court's reasoned analysis that issue-preclusion is not implicated here. Whether the acts underlying the December, 2002, domestic-abuse injunction are admissible turns on whether they are relevant: (1) to a prediction of what Hoffart would do to Wittig if the domestic-abuse injunction were not granted, and (2) to whether Hoffart's post-April 18, 2003, threats against Wittig

362

were "true threats" as that phrase is delineated by *State v. Perkins*, 2001 WI 46, ¶ 29, 243 Wis. 2d 141, 158–159, 626 N.W.2d 762, 770, which we discuss in part B below.

¶ 11.  "Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995). The only possible effect Wittig's April 18, 2003, request to have the December, 2002, domestic-abuse injunction vacated could have on any subsequent litigation is to establish that she sought vacatur for the reasons she testified to. Her request certainly did not wipe out the historical facts that underlay her petition seeking the domestic-abuse injunction or the circuit court commissioner's decision to grant it. Significantly, as the trial court recognized, Wittig's current petition did not seek to have the December, 2002, domestic-abuse injunction reinstated. Rather, her petition sought the issuance of a new injunction, based on things that Hoffart did to her after April 18, 2003. Whether the pre-April 18, 2003, evidence was admissible in connection with Wittig's petition for a domestic-abuse injunction turns on the purposes for which it was offered and used.

¶ 12.  Admission of evidence is vested in the trial court's reasoned discretion. *State v. Sullivan*, 216 Wis.2d 768, 780, 576 N.W.2d 30, 36 (1998). "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable

363

judge could reach." *Id.*, 216 Wis. 2d at 780–781, 576 N.W.2d at 36. There are two applicable legal principles in play here.

■

¶ 13.    First, WIS. STAT. RULE 904.04(2) bars the use of propensity evidence to show that a person's character makes it likely that he or she did something in conformity with that character. *La Crosse County Dep't of Human Servs. v. Tara P.*, 2002 WI App 84, ¶ 18, 252 Wis. 2d 179, 189, 643 N.W.2d 194, 199 (Rule against admitting propensity evidence is designed to prevent the fact-finder from using a person's propensity to decide "whether a party committed an alleged act."). Thus, RULE 904.04(2) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

RULE 904.04(2) does not, however, prevent the fact-finder from considering a person's other acts in order to determine whether that person will do something in the future. *Tara P.*, 2002 WI App 84, ¶ 18, 252 Wis. 2d at 189, 643 N.W.2d at 199 (in a termination-of-parental-rights case, a "parent's relevant character traits and patterns of behavior" not excluded by RULE 904.04(2)); *State v. Wolfe*, 2001 WI App 136, ¶ 36, 246 Wis. 2d 233, 255, 631 N.W.2d 240, 251 (in a sexual-predator-commitment case under WIS. STAT. ch. 980, arson and institutional misconduct admissible to show likely future behavior). Significantly, as we have seen, the legislature has commanded judges and circuit court commissioners to consider the respondent's "pattern of

abusive conduct" in determining whether to issue a domestic-abuse injunction. Wɪs. Sᴛᴀᴛ. § 813.12(4)(aj).

■

¶ 14.   Second, Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 904.04(2) also did not prevent the trial court from considering whether Hoffart's post-April 18, 2003, threats against Wittig were innocuous expressions of frustration on the one hand, or were serious "true threats" on the other. *See* Rᴜʟᴇ 904.04(2) (other acts may be admitted to show a person's intent).

■

¶ 15.   The trial court recognized that the acts underlying the December, 2002, domestic-abuse injunction were relevant both to predict Hoffart's future conduct *vis-à-vis* Wittig, and, also, to gauge the seriousness of his threats against her. The trial court also applied the balancing required by Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 904.03 and determined that the probative value of that evidence was not "substantially outweighed by the danger of unfair prejudice" to Hoffart. The trial court did not, by any stretch, erroneously exercise its discretion in admitting evidence of what it found Hoffart had done before April 18, 2003.

B.   *Sufficiency of the evidence.*

■

¶ 16.   As we have seen, the trial court determined that Hoffart's post-April 18, 2003, threats against Wittig were "true threats" and thus Hoffart, as phrased by Wɪs. Sᴛᴀᴛ. § 813.12(4)(a)3, "engaged in . . . domestic abuse of" Wittig, applying the definition of "domestic abuse" in § 813.12(1)(am)6. By using the phrase "true threats" and by reference to the decision, the trial court incorporated and applied the constitutional limitations on the punishment of speech recognized by *Perkins*.

*Perkins* explained: "Only a 'true threat' is constitutionally punishable under statutes criminalizing threats. The phrase 'true threat' is a term of art used by courts to refer to threatening language that is not protected by the First Amendment." *Id.*, 2001 WI 46, ¶ 17, 243 Wis. 2d at 151, 626 N.W.2d at 767. *Perkins* articulated the applicable objective standard:

> A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech. It is not necessary that the speaker have the ability to carry out the threat. In determining whether a statement is a true threat, the totality of the circumstances must be considered.

*Id.*, 2001 WI 46, ¶ 29, 243 Wis. 2d at 158–159, 626 N.W.2d at 770 (footnote omitted).

¶ 17. *Perkins* involved a comment made by a person suspected of being suicidal that, as set out in the decision, "if he were going to kill himself, he would first kill" the judge who had ordered him to pay some $50,000 in overdue child-support. *Id.*, 2001 WI 46, ¶¶ 6–7, 243 Wis. 2d at 147, 626 N.W.2d at 765. *Perkins* determined that the jury was improperly instructed because it was not told that it had to apply an objective standard to determine whether the person making the alleged threat "would reasonably foresee that a listener would reasonably interpret the statement to be a serious expression of a purpose to inflict bodily harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views, or other similarly protected speech." *Id.*, 2001 WI 46, ¶ 37, 243 Wis. 2d at 163, 626 N.W.2d at 772. Although our review is *de novo, see id.*,

2001 WI 46, ¶ 2 n.2, 243 Wis. 2d at 146 n.2, 626 N.W.2d at 764 n.2, we agree with the trial court that the constitutional boundaries of what is a "true threat" apply in domestic-abuse-injunction cases under WIS. STAT. § 813.12 as well.

¶ 18.   Hoffart contends that there was insufficient evidence to find that Hoffart's post-April 18, 2003, threats against Wittig were "true threats." In essence, he argues that Hoffart's threats were but examples of empty posturing, devoid of any venal intent, as evidenced, he argues, by Wittig's admission that she never reported them to the police. He also contends that the trial court erred in encompassing things Hoffart did before April 18, 2003, in the totality of the circumstances it considered. We have already ruled that Hoffart's latter contention is without merit; so is his sufficiency-of-the-evidence argument.

¶ 19.   The scope of our review of the trial court's findings of fact is clear:   "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." WIS. STAT. RULE 805.17(2). Thus,

> in reviewing the sufficiency of evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–758 (1990) (citation omitted); *see also State v. Lindgren*, 2004 WI App 159, ¶ 24, 275 Wis. 2d 851, 864, 687 N.W.2d 60, 66 (recognizing *Poellinger*'s applicability to bench trials).

¶ 20.  As we have seen, the trial court credited both the testimony of Wittig and that of Hoffart's sister, and it did not believe Hoffart's denials. Further, the trial court found that Wittig was afraid of Hoffart's threats and that her fear was objectively reasonable because of Hoffart's pattern of abusive conduct. Thus, applying the *Perkins* constitutional standard to those threats, the trial court determined that they were "true threats" that would support issuance of a domestic-abuse injunction under WIS. STAT. § 813.12. Based on the trial court's findings of fact, we agree on our *de novo* review that Hoffart's threats to harm Wittig were not constitutionally protected, and reached the requisite level of "true threats." Accordingly, we affirm.

*By the Court.*—Order affirmed.