COURT OF APPEALS
DECISION
DATED AND FILED

**July 28, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP147**

Cir. Ct. No. **2018CV169**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

PETITIONER,

PETITIONER-RESPONDENT,

V.

CHRISTOPHER ALLAN HIGGINS,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Ashland County: JOHN P. ANDERSON, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Christopher Higgins appeals from a circuit court order granting a ten-year domestic abuse injunction with a firearms restriction,

entered in favor of his former girlfriend. We conclude the court's order was supported by sufficient evidence, and we affirm.

## BACKGROUND

¶2 Higgins and Dorothy[1] were involved in a sexual relationship from June until October, 2018. The relationship included "rough sex," and they also regularly sent each other sexually explicit text messages and nude photographs. On October 7, 2018, an argument ensued after Dorothy viewed Higgins' cellphone messages and saw correspondence with other women. Dorothy felt Higgins was lying to her and having outside relationships. Higgins allegedly did not leave Dorothy's house after she asked him, prompting her to call the police.

¶3 Dorothy subsequently filed a petition for a temporary restraining order, which the Ashland County circuit court granted. Following a permanent injunction hearing, the court ordered a ten-year domestic abuse injunction with a firearms restriction. Higgins now appeals.

## DISCUSSION

¶4 Whether to grant a domestic abuse injunction presents a mixed question of fact and law. *See* **Welytok v. Ziolkowski**, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359. Findings of fact will not be set aside unless they are clearly erroneous. WIS. STAT. § 805.17(2). When reviewing the sufficiency of the evidence to support the issuance of an injunction, we will not reverse the

---

[1] Although this is a civil case, pursuant to the public policy underlying WIS. STAT. RULE 809.86 (2017-18), we have chosen to refer to the petitioner using a pseudonym. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

circuit court unless the evidence, viewed most favorably to the petitioner, is so lacking in probative value that no trier of fact acting reasonably could have found that the petitioner satisfied his or her burden of proof. *See Wittig v. Hoffart*, 2005 WI App 198, ¶19, 287 Wis. 2d 353, 704 N.W.2d 415. In this regard, whether the facts as found by the circuit court are sufficient to satisfy the statutory standards governing the issuance of a domestic abuse injunction is a question of law that we review independently. *Welytok*, 312 Wis. 2d 435, ¶23.

¶5 The decision whether to grant an injunction is a matter within the circuit court's discretion, and our review "ultimately is limited to whether that discretion was properly exercised." *Id.* Because the exercise of discretion is so essential to the circuit court's functioning, we will look for reasons to sustain its discretionary rulings. *Id.*, ¶24.

¶6 In order to issue a domestic abuse injunction, a circuit court must find there are "reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner."[2] WIS. STAT. § 813.12(4)(a)3. Ordinarily, the duration of such an injunction can be no longer than four years. Sec. 813.12(4)(c)1. However, a court may exceed this limit and "order that the injunction is in effect for not more than 10 years if the court finds, by a preponderance of the evidence … that … [t]here is a substantial risk that the

---

[2] As relevant here, "domestic abuse" is defined as: "[i]ntentional infliction of physical pain, physical injury or illness"; "[i]ntentional impairment of physical condition"; "[a] violation of [WIS. STAT.] s. 940.32 [i.e., stalking]"; or "[a] threat to engage in the [preceding] conduct." WIS. STAT. § 813.12(1)(am).

respondent may commit [an] intentional homicide … against the petitioner." Sec. 813.12(4)(d)1.a.

¶7      In the present case, Higgins does not challenge the circuit court's decision generally to issue a domestic abuse injunction.  He instead challenges the sufficiency of the evidence to issue a ten-year injunction, contending "[t]he evidence before the Circuit Court did not, as a matter of law, establish there was a substantial risk that Mr. Higgins would commit first- or second-degree homicide against the Petitioner."  Higgins also argues the court erroneously exercised its discretion by failing to consider relevant factors before ordering the injunction, and by giving too much weight to one factor.

¶8      We reject Higgins' assertion that the appellate record is insufficient to support the facts upon which the circuit court exercised its discretion in granting the ten-year injunctive relief.  Based upon the testimony at the permanent injunction hearing, the court found that approximately one month after the relationship began, Higgins' behavior "became more possessive, slightly more violent."  The court found that, by the end of August 2018, Higgins "takes … a lit cigarette, places it before her skin saying he wants to brand her, and then makes the comment that he'd rather use some type of a cattle prod, branding, something to that effect."  The court further found that later that night, Higgins approached Dorothy, "backed her up to a post on the front porch, placed both hands on her neck and choked her, told her that he wanted to see the fear in her eyes.  He held her until she couldn't breathe …."

¶9   Dorothy also testified that Higgins stated "a couple of times" that "if he ever saw me with another man he would kill us both."[3]   The circuit court specifically noted, in this regard, that Higgins threatened to kill Dorothy and that he did not deny making that threat: "[T]here is one allegation that has gone, for all practical purposes as I can see from the testimony, uncontradicted … and that is the … threat to kill."   The court also stated:

> [I]s it reasonable for me to believe that, if I see you with another man I'll kill you both?  Is that reasonable for me to believe?  Oh yeah, that's very reasonable for me to believe. Extremely reasonable for me to believe under these facts.
>
> And, therefore, not only am I satisfied that there's reasonable grounds to believe that, based upon the prior conduct of the petitioner and the respondent, the respondent has either engaged in or may engage in domestic abuse. And because of that threat—and it was uncontradicted— I'm satisfied, because it was uncontradicted, there's a substantial risk that the respondent may commit first or second degree homicide based on that threat.   And, therefore, this injunction can go up to ten years ….

¶10   Higgins contends the circuit court gave too much weight to Higgins' "single omission" during his testimony—namely, that he "did not say any magic words denying a threat [to kill]."   Higgins also argues the court failed to consider other factors.  Specifically, Higgins asserts Dorothy did not allege that Higgins had ever injured her with a firearm, attempted to injure her with a firearm, or threatened her in any way with any type of firearm.   Higgins also contends the court failed to consider evidence that Dorothy "was the aggressor or was not

---

[3] Dorothy also testified that Higgins had a hunting rifle next to the nearby door "from hunting … the day before."  Dorothy further testified, "As he was going out the door he grabbed his gun, which was next to the door, and said that he was going to kill the police officers, and that he would be going to prison for a long time …."

5

forthcoming with the circuit court." He further argues Dorothy's testimony was unsubstantiated.

¶11 Higgins' arguments fail. As an initial matter, Higgins' arguments seem to misapprehend the applicable legal standard. In particular, he seems to conflate the petitioner's burden of proof regarding a ten-year domestic abuse injunction—i.e., a preponderance of the evidence—with the elements required for the offense—i.e., that there is a substantial risk the respondent may commit an intentional homicide against the petitioner. To be clear, the petitioner must prove that the risk of homicide is substantial, but the existence of that type of risk only needs to be shown as being more likely than not. *See* WIS. STAT. § 813.12(4)(d)1.a. This burden of proof is considered the lowest. *See **Marquez v. Mercedes Benz USA, LLC***, 2012 WI 57, ¶37, 341 Wis. 2d 119, 815 N.W.2d 314.

¶12 A greater impediment to Higgins, however, is our standard of review, which requires that we provide "due regard" for the circuit court's superior opportunity to evaluate witness credibility and the weight of the evidence. *See* WIS. STAT. § 805.17(2). In most instances, when acting as fact finder, the circuit court is considered the ultimate arbiter of witness credibility. ***Johnson v. Mertz***, 95 Wis. 2d 141, 152, 289 N.W.2d 813 (1980). We find no basis to reject the circuit court's credibility determinations in this case—in particular regarding the threats to kill. Dorothy also testified regarding Higgins' access to firearms and specifically stated she was aware that Higgins had two shotguns. As a result, the court appropriately scheduled a firearms surrender hearing and ordered Higgins to surrender his firearms within forty-eight hours. Furthermore, Higgins' remaining arguments appear to be merely that the court did not reach competing inferences from the evidence in Higgins's favor. Here too, if more than one reasonable inference may be drawn from the credible evidence, we must accept the inference

6

drawn by the circuit court. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979).

¶13 In all, the transcript of the injunction hearing shows by a preponderance of the evidence that there was a substantial risk Higgins may commit an intentional homicide against Dorothy. The circuit court therefore properly exercised its discretion by ordering that the domestic abuse injunction would remain in effect for ten years with a firearms restriction.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.