COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1378-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CV560

**IN COURT OF APPEALS
DISTRICT III**

PETITIONER,

PETITIONER-RESPONDENT,

V.

NATHAN MERRICK PLUMB,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Nathan Plumb appeals[1] an order granting a domestic abuse injunction in favor of his former girlfriend, Elizabeth.[2] Plumb argues that the circuit court erred by granting the injunction without finding that Plumb intended to harm Elizabeth and, alternatively, that such a finding would be clearly erroneous. Plumb also contends that the court erred by granting the injunction without considering the potential danger to the petitioner and whether there was a pattern of abusive conduct, as required under the statute governing domestic abuse restraining orders and injunctions. *See* WIS. STAT. § 813.12(4)(aj). We reject these arguments and affirm the order.

## BACKGROUND

¶2      Elizabeth filed two petitions against Plumb—one seeking a child abuse restraining order on behalf of her four-year-old son, and one seeking a domestic abuse injunction on her own behalf. The petitions arose from events alleged to have occurred on May 29, 2020. It is undisputed that, at that time, Plumb and Elizabeth were in a relationship, and both Elizabeth and her son were in the process of moving from Suamico to Plumb's Waunakee home.

¶3      On the morning of May 29, 2020, Plumb observed text messages between Elizabeth and two other men that led him to question her fidelity. The parties agree that they argued, although they dispute the details of what exactly occurred. Plumb testified at the injunction hearing that he confronted Elizabeth about the text messages while they were in the couple's bedroom closet, and he

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17 (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] For ease of reading, we refer to the petitioner using a pseudonym.

told her "to get the F out." Plumb, who was still holding Elizabeth's phone, claimed that as he walked to the garage "to get away," he accidentally "brushed" against Elizabeth's son with his leg, causing the child to fall down. Plumb then entered his SUV and started the ignition before Elizabeth "came after" him and began punching and pulling him in an attempt to retrieve her phone through the driver's side window. Plumb claimed that in an attempt to protect himself, he accidentally hit Elizabeth directly on the nose.

¶4    Plumb further recounted that after driving away, he realized he had the child's car seat and the only set of keys for Elizabeth's vehicle, so he drove back to his home to return them. Plumb parked at the end of the driveway and walked the car seat and keys to the garage. He then noticed Elizabeth and her child were in his SUV. Believing that Elizabeth was stealing his vehicle, Plumb ran back to his SUV and jumped through the driver's side window to stop her. Plumb claimed that during the altercation inside the SUV, Elizabeth injured three of his ribs with her knee. Plumb ultimately bit Elizabeth as she "fish hooked" and "ripped" his face. Plumb further recounted that a neighbor pulled him out of the vehicle by his legs, and that he simultaneously pulled Elizabeth out by her ankle "to stop her from stealing" the vehicle.

¶5    Elizabeth testified that Plumb first confronted her not in the closet, but at the threshold between the garage and the mudroom and he said "you're fucking cheating on me" before punching her in the face, breaking her nose, and causing her to fall. Elizabeth further claimed that Plumb shoved her son aside, causing him to fall and injure himself. Plumb then left in his SUV. Elizabeth—disoriented from the punch and with blood running from her nose—realized she did not have her car keys or phone, so she walked with her son to a neighbor's home, located across a shared cul-de-sac.

¶6      Shortly thereafter, Elizabeth noticed that Plumb's SUV was parked in the cul-de-sac, with a door open. She ran to the vehicle, placed her son in the passenger seat, and started to drive away when she saw Plumb running down the driveway and screaming for her to stop the vehicle. Elizabeth further claimed that when she rolled down the driver's side window to tell Plumb that she was leaving, Plumb jumped through the window and the two struggled. During the struggle, in which Elizabeth claimed she was attempting to protect her son, Plumb bit three of Elizabeth's fingers. A neighbor pulled Plumb out of the vehicle and Plumb pulled Elizabeth with him. After a brief struggle on the ground, the neighbor restrained Plumb, and Elizabeth ran back to that neighbor's home with her son. Elizabeth denied striking Plumb at any time during the altercations. In addition to a broken nose, Elizabeth testified that she had a concussion, scrapes, bruises, and "badly swollen" fingers.

¶7      The argument ended the parties' relationship, and Elizabeth and her son moved back to the Green Bay area. After the injunction hearing, the circuit court denied the child abuse injunction, finding that the child was not injured when he fell in the house and that any injuries he incurred from the struggle in Plumb's vehicle were accidental.[3] The court, however, granted the domestic abuse injunction for a period of four years. This appeal follows.

## DISCUSSION

¶8      Plumb argues that the evidence at the injunction hearing was insufficient to support the issuance of a domestic abuse injunction, as there was no

---

[3] The denial of the child abuse injunction is not at issue in this appeal.

finding of intent to harm on his part and any such finding was not supported by the record. He further asserts the circuit court erred by failing to consider required statutory factors when granting the injunction. Whether to grant a domestic abuse injunction presents a mixed question of fact and law. *Cf. Welytok v. Ziolkowski*, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359 (articulating standard for reviewing the issuance of a harassment injunction). "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [circuit] court to judge the credibility of the witnesses." WIS. STAT. § 805.17(2).

¶9      In appeals concerning the sufficiency of the evidence to support the issuance of an injunction, we will not reverse the circuit court unless the evidence, viewed most favorably to the petitioner, is so lacking in probative value that no fact finder, acting reasonably, could have found that the petitioner satisfied his or her burden of proof. *See Wittig v. Hoffart*, 2005 WI App 198, ¶19, 287 Wis. 2d 353, 704 N.W.2d 415. In this regard, whether the facts as found by the circuit court are sufficient to satisfy the statutory standards governing the issuance of a domestic abuse injunction is a question of law that we review de novo. *Welytok*, 312 Wis. 2d 435, ¶23.

¶10      The ultimate decision whether to grant such an injunction is a matter within the circuit court's discretion, and our review "ultimately is limited to whether that discretion was properly exercised." *Id.*; *see also Forest Cnty. v. Goode*, 215 Wis. 2d 218, 225, 572 N.W.2d 131 (Ct. App. 1997), *aff'd*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998) ("Normally, injunctive relief is ordered in the discretion of the [circuit] court, and this court will not change the [circuit] court's decision unless it is an erroneous exercise of discretion."). A circuit court's discretionary determination will be affirmed where it is "demonstrably

made and [is] based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 468, 588 N.W.2d 278 (Ct. App. 1998). Further, "because the exercise of discretion is so essential to the [circuit] court's functioning, we generally look for reasons to sustain discretionary rulings." *Welytok*, 312 Wis. 2d 435, ¶24.

¶11 To issue a domestic abuse injunction, a circuit court must find there are "reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." WIS. STAT. § 813.12(4)(a)3. As relevant here, the statutory definition of "domestic abuse" includes the "[i]ntentional infliction of physical pain, physical injury or illness." Sec. 813.12(1)(am)1.

¶12 Plumb argues that the circuit court erroneously exercised its discretion by granting the injunction without it finding that Plumb had intended to inflict Elizabeth's injuries. While the court did not make a specific statement finding that Plumb intended to injure Elizabeth, it is apparent from the court's comments that intent was implicitly found. *See Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 311-12, 470 N.W.2d 873 (1991) (holding that a circuit court's findings of fact may be implicit from its rulings).

¶13 In granting the injunction, the circuit court determined that regardless whether Elizabeth's broken nose occurred in the house or in the garage, "it is inconceivable given how [Plumb] describes this injury occurring that the level of force he used on [Elizabeth] was … necessary or even within the bounds of reason to secure the result that he was looking for." The court added:

6

> [Plumb] indicated he was attempting to disengage [Elizabeth] from ... attempting to grab her phone from his hand and stop him from leaving. And what happened is, she ends up with a broken nose. And I find that his account of it is just not credible, even if it did happen in the car.

The clear inference from the court's statements is that it found Plumb intended to inflict Elizabeth's injury when he hit her with enough force to break her nose.

¶14 Plumb nevertheless argues that even if the circuit court implicitly found intent, the finding was clearly erroneous based on the evidence. We disagree. Elizabeth's testimony, along with the nature and extent of her injuries, was sufficient to support the finding, as intent to injure can be reasonably inferred from the evidence.

¶15 Plumb, however, suggests it was logically inconsistent for the circuit court both to discredit Elizabeth's testimony as it related to the child abuse allegations and then to find her credible as it related to her own injuries. We are not persuaded. The court found that contact between Plumb and the child occurred in the house—Plumb conceded as much at the hearing—but the court was simply not convinced that the child was injured during that interaction. Based on the record, it is not inconsistent to conclude that Plumb intended to harm Elizabeth, but not her son. Moreover, a finder of fact may find some of a witness's testimony credible while rejecting another portion of it. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386 (Ct. App. 1985). Ultimately, the court's implicit finding of intent was not clearly erroneous.

¶16 Next, Plumb contends that the circuit court erroneously exercised its discretion by granting the injunction without considering the potential danger to the petitioner and whether there was a pattern of abusive conduct, as required under WIS. STAT. § 813.12(4)(aj). That statute provides, in relevant part:

7

> In determining whether to issue an injunction, the judge or circuit court commissioner shall consider the potential danger posed to the petitioner and the pattern of abusive conduct of the respondent but may not base his or her decision solely on the length of time since the last domestic abuse or the length of time since the relationship ended.

That the court did not expressly discuss these particular factors does not mean the court did not consider them. The court explicitly stated: "I'm satisfied [there are] reasonable grounds to believe that the respondent engaged in or, based upon prior conduct of the petitioner, respondent may engage in domestic abuse of the petitioner as defined in [§] 813.12, and in this case I'm satisfied the defendant engaged in such conduct."

¶17 Plumb nevertheless argues that even if the circuit court considered these statutory factors, the only reasonable conclusion would have been to deny the petition because there was no pattern of abusive conduct and the parties neither lived near each other nor wanted anything to do with each other going forward. By its plain terms, WIS. STAT. § 813.12 does not require the court to find a pattern of conduct existed before an injunction may be issued. An injunction may issue where there are "reasonable grounds to believe that the respondent has engaged in, or ... may engage in, domestic abuse." Sec. 813.12(4)(a)3. "Domestic abuse" means any of several acts, none of which need happen more than once before such abuse can exist. Sec. 813.12(1)(am). One of those acts is the intentional infliction of physical pain, which occurred when Plumb hit Elizabeth in the face and broke her nose.

¶18 While it is true that WIS. STAT. § 813.12(4)(aj) directs the circuit court to consider "the pattern of abusive conduct of the respondent" in determining whether to issue an injunction, we do not construe this section to require that more than one act of abuse occur before an injunction may issue. To do so would

8

directly contradict § 813.12(4)(a)3. and (1)(am), which plainly and unambiguously provide that an injunction may issue on one incident of abuse. In fact, it would be absurd to require that Elizabeth be the subject of abuse on multiple occasions before she would be entitled to protection. Whether multiple acts have occurred is something the court must consider, but the court need not find a pattern of abusive conduct existed as a condition precedent to granting a domestic abuse injunction.

¶19 Regarding the potential danger to the petitioner, the circuit court was not required to accept the parties' testimony that they did not intend to have contact with one another in determining whether an injunction was necessary. Regardless of the lack of prior abuse or the parties' geographical distance from each other, the court granted the injunction because it was concerned about the "very high level" of anger exhibited by Plumb and the nature and extent of the injury he intentionally caused. Given these factors, the court could reasonably find the injunction was necessary to protect Elizabeth. Because the evidence supports the court's exercise of discretion in granting the domestic abuse injunction, we affirm.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.