COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1525**

Cir. Ct. No. **2025CV79**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

PETITIONER,

   PETITIONER-APPELLANT,

 V.

PAUL GERALD CHOJNACKI,

   RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Chippewa County: STEVEN H. GIBBS, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Sheila[1] appeals from a circuit court order denying her petition for a four-year domestic abuse injunction (DAI) against Paul Gerald Chojnacki.   Sheila argues that the court erred by applying either issue or claim preclusion in this case as a basis to refuse to consider, as relevant to this appeal, evidence introduced in support of a previous DAI against Chojnacki, which was granted in 2021; Chojnacki's 2022 criminal conviction for substantial battery against Sheila; and Sheila's unsuccessful motion to extend the term of the 2021 DAI for ten years.

¶2     We conclude, pursuant to the plain language of WIS. STAT. § 813.12(4), that when determining whether to issue a DAI, a circuit court can and must consider all admissible and credible evidence demonstrating the respondent's "pattern of abusive conduct," regardless of whether the evidence also served as a basis for an earlier DAI or a criminal conviction.  *See* § 813.12(4)(aj).   Here, the circuit court appeared to sua sponte apply the doctrines of issue or claim preclusion when stating that the facts leading to a prior DAI and Chojnacki's resulting criminal conviction could not provide the basis for a new DAI. Therefore, we cannot determine, based on the record before us, to what extent, if any, the court considered Chojnacki's alleged history of abuse, inclusive of the allegations that served as the basis for the 2021 DAI and Chojnacki's 2022 conviction.   Consequently, we reverse and remand for further proceedings consistent with this decision.

---

[1] "Petitioner" has been substituted for the petitioner-appellant's name in the caption for this appeal.  *See* WIS. STAT. RULE 809.81(9) (2023-24).   For ease of reading, and to protect confidentiality, we refer to the petitioner-appellant and her son using pseudonyms.   All references to the Wisconsin Statutes are to the 2023-24 version.

## BACKGROUND

¶3      Chojnacki and Sheila were married for more than 18 years.[2]  Toward the end of their relationship, Chojnacki was charged in Chippewa County Case No. 2021CF08 with three counts of substantial battery, one count of misdemeanor battery, and one count of disorderly conduct, all charges as an act of domestic abuse.  According to the criminal complaint, the charges were based on "significant injuries" that Sheila suffered after Chojnacki "turned physically violent toward her" during an argument about politics "while the two were in their moving vehicle."  Chojnacki "punch[ed]" Sheila "in the face with a closed fist 5 to 6 times," causing her to suffer a "brain bleed"; "a broken nose; a quarter-inch long laceration to the bridge of her nose, which … would require stitches; two front teeth that were chipped; and bruising under both of her eyelids."  Chojnacki then drove Sheila to the emergency department, and while they were in the parking lot, Sheila alleged that Chojnacki said, "I'm sorry I didn't kill you."

¶4      In January 2022, Chojnacki pled no contest to one count of substantial battery, as an act of domestic abuse, and the remaining charges were dismissed and read in.  In February 2022, Chojnacki was sentenced to 2 years' probation with 60 days' conditional jail time.

¶5      While that criminal case was pending, Sheila filed a petition for a temporary restraining order (TRO) and DAI in Chippewa County Case No. 2021CV27.  On February 8, 2021, a court commissioner entered a four-year

---

[2]  They have children together, and one of those children, Grant, is over the age of 18.

injunction, which was affirmed by the circuit court, the Honorable Benjamin J. Lane presiding, on de novo review.

¶6      Prior to the 2021 DAI expiring, Sheila moved to extend the injunction for an additional ten years, pursuant to WIS. STAT. § 813.12(4)(c)2. and (d).  The circuit court, Judge Lane presiding, held a two-day evidentiary hearing and, thereafter, denied the ten-year extension, finding that Sheila had failed to meet her burden for a ten-year order.  The 2021 DAI expired on March 5, 2025.

¶7      The next day, on March 6, 2025, Sheila filed the petition for a TRO and DAI at issue in this appeal.  In addition to the facts providing the basis for the 2021 DAI and Chojnacki's substantial battery conviction in Case No. 2021CF08, Sheila alleged years of prior abuse at the hands of Chojnacki, which she had also outlined at the extension hearing.  According to Sheila, during their marriage, Chojnacki "would measure out [her] food" and withhold food; would withhold bathroom privileges; would physically punish her; "would punch, slap, push [her] head against the floor and sometimes strangle [her] until [she] lost consciousness"; and would force nonconsensual sexual acts, including some that "would be really rough to the point of making [her] bleed" and which eventually led to a hysterectomy in 2024.

¶8      The circuit court, the Honorable James M. Isaacson presiding, denied Sheila a TRO, without explanation, but the court scheduled a full injunction hearing at Sheila's request.  *See* WIS. STAT. § 813.12(2m).  Thereafter, Chojnacki moved to dismiss Sheila's petition or, in the alternative, for summary judgment.  Chojnacki argued, first, without citing any legal authority, that "a hearing on the petition when a TRO is denied is, in effect, a hearing on a motion to

4

reconsider the denial of the TRO." He claimed, again without citing any legal authority, that based on the denial of the TRO, the standard for a motion to reconsider—newly discovered evidence or a manifest error of law or fact, *see Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853—would apply to Sheila's petition, rather than the standard specifically outlined in § 813.12(4). According to Chojnacki, because Sheila was unable to meet either of the motion to reconsider standards, her petition should be dismissed.

¶9      In the alternative, Chojnacki moved for summary judgment because "[a]ll of the allegations in this petition, except for the conduct underlying [Case No. 20]21CF08, were the subject of testimony on" Sheila's motion to extend the 2021 DAI, and, therefore, "this case is well-suited for summary judgment."

¶10     The circuit court, the Honorable Steven H. Gibbs presiding, held an evidentiary hearing on Sheila's petition on April 22, 2025. At the start of the hearing, the court addressed and denied Chojnacki's motion for summary judgment, but it permitted the hearing to proceed on Chojnacki's motion to dismiss. In doing so, it appears that the court understood Chojnacki to be arguing that the 2021 DAI had a preclusive effect on the evidence the court could consider with regard to Sheila's current petition. In particular, the court issued an oral ruling that "we're focusing on facts that weren't taken care of in the first four-year injunction because that is res judicata and can't be the basis of the new one here."

¶11     Sheila then testified in detail regarding the physical, sexual, and psychological abuse she allegedly suffered at the hands of Chojnacki during their

marriage.[3] Grant also testified, explaining that he had seen Chojnacki be violent with Sheila while he was growing up. According to Grant, Chojnacki threatened Sheila in July 2024, when Chojnacki told him over the phone, "I cannot wait until the restraining order is over so I can do whatever I want." Grant observed that Chojnacki said this "in a sort of like sinister type of tone," which Grant interpreted "as a statement that [Chojnacki] wanted to come back up here and hurt my mother again." For his part, Chojnacki admitted the conduct in Case No. 2021CF08 and admitted to "push[ing]" Sheila in front of the children, but he denied any sexual assault against Sheila and denied having made the comment to Grant. It was undisputed that Chojnacki had not violated the 2021 DAI.

¶12 The circuit court ultimately determined that Sheila had failed to meet her burden to grant another four-year DAI and dismissed her petition. The court stated that Chojnacki had not had any contact with Sheila after the issuance of the 2021 DAI, and it reasoned that Chojnacki's comment about the restraining order was akin to a "pre-crime investigation" in the film *Minority Report*, in which law enforcement "arrested people for their thoughts." Sheila appeals.

## DISCUSSION

¶13 We review the circuit court's decision to grant or deny a DAI for an erroneous exercise of discretion. *See* WIS. STAT. § 813.12(4)(a) (stating that "[a] judge or circuit court commissioner *may* grant an injunction" (emphasis added));

---

[3] Sheila was also questioned on cross-examination about why she did not tell law enforcement at the hospital, during the incident in Case No. 2021CF08, about other physical and sexual abuse that she alleged Chojnacki had inflicted on her previously. Sheila testified that she "was physically unable to" because she "was barely able to" tell law enforcement what Chojnacki had done on that day.

*Liberty Grove Town Bd. v. Door Cnty. Bd. of Supervisors*, 2005 WI App 166, ¶10, 284 Wis. 2d 814, 702 N.W.2d 33 ("The use of the word 'may' in a statute implies discretionary authority."). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶14 The resolution of this appeal also requires us to interpret and apply statutes, which present questions of law that we review de novo. *Meyers v. Bayer AG*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).

¶15 Here, the parties disagree as to the fundamental issue in this case. Sheila argues that the circuit court erred by applying either issue or claim preclusion to bar consideration of the facts underlying the 2021 DAI because

neither preclusion doctrine applies in the DAI context.[4]  In contrast, Chojnacki asserts that neither issue nor claim preclusion is at issue in this case because the court's "decision to deny the 2025 Injunction did not rest upon claim preclusion and because claim preclusion was not addressed in the Circuit Court."[5]  According to Chojnacki, the court denied the DAI because it implicitly found Sheila and Grant not credible.  Therefore, he asserts that "[b]ecause claim preclusion was not applied in this case or litigated in the Circuit Court at all, it would be inappropriate for this Court to render a decision on whether claim preclusion should or should not be applied in this specific case or any domestic abuse injunction case."

---

[4] Issue preclusion applies when an issue of fact or law "was 'actually litigated and determined in the prior proceeding by a valid judgment in a previous action' and 'the determination was essential to the judgment.'"  *Clarke v. WEC*, 2023 WI 79, ¶44, 410 Wis. 2d 1, 998 N.W.2d 370 (citation omitted).  For issue preclusion, the court also considers whether application of the doctrine is fair. *Id.*

In contrast, the doctrine of "claim preclusion prevents relitigation of 'all matters which were litigated or which might have been litigated in the former proceedings.'" *Id.*, ¶46 (citations omitted).  Three elements must be present for claim preclusion to apply: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." *Id.* (citation omitted).

[5] We note that Chojnacki appears to adopt inconsistent positions on appeal.  He states first that he "did not advance either an issue preclusion or a claim preclusion argument in the Circuit Court" or "seek to exclude any testimony regarding the 2021 Injunction."  Instead, he explains, the court "raised that issue sua sponte, and [Sheila's counsel] agreed with the Circuit Court's position."  Later in his response brief, however, Chojnacki states that the court "did not apply claim preclusion in this case" and "did not deny the 2025 Injunction because it applied claim preclusion." (Formatting altered.)  Thus, it appears that Chojnacki is arguing that the court raised preclusion, stated that it applied, and obtained agreement from counsel on the issue, but the court then did not actually apply preclusion in the case, despite the court not stating that fact or addressing its earlier ruling on the record.

Regardless of any logical fallacies with this argument, to the extent Chojnacki is suggesting that the circuit court properly considered all of the evidence presented by Sheila in this case, we reject this argument for the reasons we explain in more detail below.

¶16 Consistent with the rule that we are to decide cases on the narrowest possible grounds, *State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997), and given that the parties disagree regarding the subject of this appeal, we do not specifically address whether issue or claim preclusion applies in the DAI context. We resolve this case, instead, based on a plain language interpretation of WIS. STAT. § 813.12(4). Based on the record before us on appeal, we conclude that the circuit court erroneously exercised its discretion by failing to apply the proper standard under § 813.12(4)(aj), which *requires* the court to consider "the pattern of abusive conduct of the respondent."

¶17 We turn first to the text of WIS. STAT. § 813.12(4), as the resolution of this case begins and, in large part, ends there. Section 813.12(4)(a) provides that the circuit court[6] "may grant" a DAI if, as relevant here, the court "finds reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." Sec. 813.12(4)(a)3. The statute defines "reasonable grounds" to mean "more likely than not that a specific event has occurred or will occur." Sec. 813.12(1)(cg). The statute also defines "domestic abuse," as relevant to this case, to mean "any of the following engaged in by an adult family member or adult household member against another adult family member or adult household member": (1) "[i]ntentional infliction of physical pain, physical injury or illness"; (2) "[i]ntentional impairment of physical condition"; (3) "[a] violation of [WIS. STAT. §] 940.225(1), (2) or (3)"; (4) "[a] violation of [WIS. STAT. §] 940.32";

---

[6] WISCONSIN STAT. § 813.12(4)(a) states that "[a] judge or circuit court commissioner may grant an injunction," but for ease of reading we will simply refer to the circuit court going forward.

(5) "[a] violation of [WIS. STAT. §] 943.01, involving property that belongs to the individual"; or (6) "[a] threat to engage in the [above listed] conduct." Sec. 813.12(1)(am).

¶18    In making the required findings, the circuit court "shall consider the potential danger posed to the petitioner and the pattern of abusive conduct of the respondent but may not base [its] decision solely on the length of time since the last domestic abuse or the length of time since the relationship ended." WIS. STAT. § 813.12(4)(aj); *see also* **State v. Cox**, 2018 WI 67, ¶11, 382 Wis. 2d 338, 913 N.W.2d 780 ("The general rule is that the word 'shall' is presumed mandatory when it appears in a statute." (citation omitted)).

¶19    The operative terms in WIS. STAT. § 813.12(4)(aj) are not defined in the statute, but their meanings are clear and may be established by considering relevant dictionary definitions. *See* **Swatek v. County of Dane**, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995). For example, "potential danger" refers to the "exposure to harm, loss, pain, or other negative result" that is "possible if the necessary conditions exist." *Potential*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Danger*, BLACK'S LAW DICTIONARY (12th ed. 2024). A "pattern" is defined as "[a] mode of behavior or series of acts that are recognizably consistent." *Pattern*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Mode*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "mode" as "[a] manner of behaving, living, or doing something"). Finally, "conduct" is defined as "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; *collectively, a person's deeds*." *Conduct*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

10

¶20      Read together, and given the plain meaning of the terms, WIS. STAT. § 813.12(4)(aj) compels one conclusion: the circuit court is required to assess the respondent's collective history of deeds, his or her recognizably consistent manner of behaving, and the petitioner's resulting exposure to harm, without limitation, to determine whether there are reasonable grounds to believe that the respondent has engaged in or may engage in future domestic abuse.  *See* § 813.12(4)(a), (aj).

¶21      Moreover, it is clear that the circuit court's review of this "pattern of abusive conduct" is without limitation because the legislature was not silent as to other limits within the statute.  WISCONSIN STAT. § 813.12(4)(aj) also provides that the court "may not base [its] decision solely on the length of time since the last domestic abuse or the length of time since the relationship ended"; that the court "may grant only the remedies requested by the petitioner"; and that the court "may not dismiss or deny granting an injunction because of the existence of a pending action or of any other court order that bars contact between the parties, nor due to the necessity of verifying the terms of an existing court order."  Absent from the statute is any language prohibiting the court from considering evidence that served as a basis for a prior DAI or criminal behavior by the respondent toward the petitioner when considering the "pattern of abusive conduct," and Chojnacki does not provide any argument to the contrary.[7]

---

[7] We pause here to address the parties' arguments regarding ***Wittig v. Hoffart***, 2005 WI App 198, 287 Wis. 2d 353, 704 N.W.2d 415.  In that case, the petitioner sought a DAI against her estranged husband following a history of violence.  ***Id.***, ¶¶2-3.  The circuit court had granted an initial DAI in 2002, which was later vacated at the petitioner's request to facilitate counseling.  ***Id.***, ¶3.  Later, the petitioner sought a new injunction, which the court granted after finding the petitioner credible, finding the husband incredible, and finding that the husband had made "true threats."  ***Id.***, ¶7.  On appeal, the husband argued, "under an issue-preclusion theory," that the court should not have considered any of his acts against the petitioner that underlay the 2002 injunction that was vacated and that there was insufficient evidence for it to conclude that his threats were "true threats."  ***Id.***, ¶¶9-10.

(continued)

11

¶22     Even if the statutory language were susceptible to ambiguity, which it is not, a conclusion to the contrary would upend the protective purpose of a DAI by essentially shielding a respondent from future injunctions by exhausting the evidentiary value of his or her past conduct and retroactively limiting future accountability.   The circuit court's understanding of the statute also finds no support in the statute's text, and, in fact, the statute specifically provides that the passage of time does not limit the admissibility of the evidence.  *See* WIS. STAT. § 813.12(4)(aj).  Further, considering criminal law by analogy, a court or a jury would never be asked to assess whether a defendant is, for example, a repeat offender while at the same time ignoring their prior offenses that served as a basis

---

This court agreed with the circuit court that issue preclusion was not implicated in that case, and it concluded that the petitioner's request to have the 2002 DAI vacated "certainly did not wipe out the historical facts that underlay her petition."  *Id.*, ¶¶10-11.  Instead, we reasoned that whether the facts underlying the 2002 DAI petition were properly considered turned on the admissibility of the evidence.  *Id.*  The court observed, however, that WIS. STAT. § 904.04(2) "does not … prevent the fact[]finder from considering a person's other acts in order to determine whether that person will do something in the future" or whether the husband's statements were "true threats."  *Wittig*, 287 Wis. 2d 353, ¶¶13-14.  Thus, we determined that because the circuit court engaged in the proper analysis to gauge the admissibility of the evidence, the court "did not, by any stretch, erroneously exercise its discretion in admitting evidence" that served as a basis for the 2002 DAI.  *Id.*, ¶15.

Sheila asserts that she "appropriately directed the [circuit] court to" *Wittig*, which is "binding case law regarding issue preclusion in DAI cases, yet the … court failed to follow it." According to Sheila, pursuant to *Wittig*, the court "should have determined issue preclusion had no application because the doctrine is unfair to apply in DAI cases" and "should have then admitted evidence of past abuse in this case for the purposes of predicting [Chojnacki's] future conduct" and also to "gauge the seriousness of his threats against her."  In contrast, Chojnacki argues that "*Wittig* does not make such a sweeping declaration regarding issue preclusion as [Sheila] argues" because "*Wittig* held that, in a specific case, it was not an [erroneous exercise] of discretion for a circuit court to admit and consider evidence, for a specific purpose and over a respondent's objection, that met the criteria for issue preclusion."

Given our conclusion in this case, we need not determine whether *Wittig* declares that issue preclusion does not apply in the DAI context.  Instead, we merely note that our holding in that case is not at odds with our decision here, and, further, our reasoning in *Wittig* lends support to our plain language interpretation of WIS. STAT. § 813.12(4).

for a previous conviction, *see* WIS. STAT. § 939.62 (discussing "[i]ncreased penalty for habitual criminality"), and the same is true under § 813.12(4), *see* ***Wittig v. Hoffart***, 2005 WI App 198, ¶13, 287 Wis. 2d 353, 704 N.W.2d 415 (citing cases discussing other situations where courts may consider conduct to show likely future behavior).

¶23 Therefore, we conclude, pursuant to the language of WIS. STAT. § 813.12(4), that the circuit court in this case was required to consider all admissible and credible evidence of Chojnacki's proven and alleged prior abuse during the history of the parties' marriage that demonstrates a pattern of abusive conduct. Such evidence would include the evidence giving rise to Chojnacki's criminal conviction, the evidence that provided the basis for the 2021 DAI, the evidence produced at the extension hearing, Chojnacki's testimony in this case, and any other evidence presented by Sheila or Grant that she claims provides a basis for her current request for a DAI. After consideration of that evidence, the court must then decide if Sheila has established reasonable grounds to believe that Chojnacki has engaged in domestic abuse of Sheila or, based upon the parties' prior conduct, may engage in domestic abuse of Sheila. *See* § 813.12(4)(a)3.

¶24 Based on our review, we are unable to conclude whether the circuit court considered all of the required evidence.[8] Importantly, the court made an

---

[8] We note with some concern certain opinions the circuit court expressed during its oral ruling on Sheila's petition. Specifically, the court stated:

(continued)

13

explicit ruling that it was "focusing on facts that weren't taken care of in the first four-year injunction because that is res judicata and [those facts] *can't be the basis of the new* [*injunction*]."[9]   (Emphasis added.)   Given that ruling, which is a

---

> We don't have a pre-crime investigation because we don't know what people think. We don't know what people are thinking and even if they do think it, they would have to act upon it because what we go based on our criminal system is facts, facts that happen, not what people think or what possibly could happen. We don't punish people on the ability to do things. I have the ability, since I carry concealed, to shoot up this courtroom, but I don't do it. I have the ability to ram my car through buildings, but I don't do it. I have the ability to do a lot of things, but I don't do it. We don't punish people on the ability to do things. We punish them on their threats to do things or their actual actions. We don't punish people on their thoughts.

Initially, we recognize that a DAI is not part of our criminal law or criminal justice system. A DAI is issued by a civil court, *see* WIS. STAT. § 801.01(2) ("[WIS. STAT. chs.] 801 to 847 govern procedure and practice in circuit courts of this state *in all civil actions* and special proceedings whether cognizable as cases at law, in equity or of statutory origin …." (emphasis added)); WIS. STAT. ch. 813 (under the heading Civil Procedure of the Wisconsin Statutes), and the burden of proof required to grant an injunction is lower than the "beyond a reasonable doubt" standard used in criminal trials, *see* WIS. STAT. § 813.12(1)(cg), (4)(a)3., (4)(d)1. Further, a DAI is not itself a *punishment*. It is a civil protection order, and an individual would only be subject to possible punishment or criminal repercussions if he or she *violated* the terms of the DAI. Sec. 813.12(8).

Finally, as a civil protection order, the primary goal of a DAI is to provide protection to the petitioner and to prevent future harm. Accordingly, Wisconsin law not only permits the circuit court to order a DAI if the evidence shows that the respondent has in the past committed an act of domestic abuse, as defined in the statute, but the statute also permits a court to issue a DAI to prevent future injury to the petitioner when the respondent's past conduct, abusive or not, demonstrates that it is more likely than not that domestic abuse will occur. *See* WIS. STAT. § 813.12(1)(am), (4)(a)3.

[9] Chojnacki argues, however, that "[a]t no time did the Circuit Court rule that the events underlying the 2021 Injunction could not be presented" and contends that "[t]he Circuit Court simply held that those events could not be the basis for a second four-year injunction." We are not persuaded by his argument. Essentially, Chojnacki is claiming that the circuit court did not erroneously exercise its discretion because it permitted Sheila to present evidence of Chojnacki's conduct in 2021 while simply declining to permit that conduct to serve as a basis for a new four-year injunction.

(continued)

14

material error of law, we cannot determine to what extent, if any, the court considered only evidence that occurred after the 2021 DAI was in effect and if the court made any credibility determinations about the witnesses in this case. Despite Chojnacki's arguments to the contrary, the record is also insufficient for us to conclude that the court made any implicit findings.

¶25 Furthermore, we state clearly for the record that the circuit court had discretion, pursuant to the plain language of WIS. STAT. § 813.12(4), to grant Sheila's DAI petition based *entirely* on Chojnacki's previously proven conduct in Case No. 2021CF08, irrespective of any of Sheila's or Grant's testimony at the hearing. Sec. 813.12(4)(a) (stating, in relevant part, that "[a] judge or circuit court commissioner may grant an injunction … if all of the following occur:" a petition is filed, the respondent is properly served, and "[a]fter hearing, the judge or circuit court commissioner finds reasonable grounds to believe that the respondent has engaged in … domestic abuse of the petitioner"). Accordingly, the circuit court erroneously exercised its discretion by failing to apply the proper standard under § 813.12(4)(a) and (aj) and by limiting the admissible evidence it would consider in support of Sheila's DAI petition.[10]

---

We disagree with Chojnacki's basic reasoning. Evidence is introduced in judicial proceedings for a purpose: to establish facts material to the legal determination before the court. A ruling that evidence may be heard but may not inform the outcome is not an evidentiary ruling in any meaningful sense and suggests a predetermined conclusion. If the circuit court did what Chojnacki suggests here, that conduct, in and of itself, would be an erroneous exercise of discretion.

[10] Sheila also argues on appeal that the circuit court failed to properly analyze whether Chojnacki's statement to Grant was a "true threat." "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Kindschy v. Aish*, 2024 WI 27, ¶14, 412 Wis. 2d 319, 8 N.W.3d 1 (alteration in original; citations omitted). In *Kindschy*, our supreme court explained that "[t]he existence of a [true] threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Id.* (alterations in original; citations omitted).

(continued)

¶26 Further, to the extent Chojnacki's arguments in his motion to dismiss and at the hearing suggested, and the circuit court may have then reasoned, that the prior refusal to extend the 2021 DAI for ten years precluded the court from relying on the same testimony offered in support of the extension, we conclude that the statutory language of WIS. STAT. § 813.12 does not support such a conclusion. Sheila specifically requested a ten-year extension of the 2021 DAI, rather than another four-year extension. *See* § 813.12(4)(c)2., (4)(d)1. Pursuant to § 813.12(4)(d)1., a court may extend an injunction "for not more than 10 years, if the court finds, by a preponderance of the evidence," that either or both of the following is true:

> a. There is a substantial risk that the respondent may commit first-degree intentional homicide under [WIS. STAT. §] 940.01, or 2nd-degree intentional homicide under [WIS. STAT. §] 940.05, against the petitioner.
>
> b. There is a substantial risk that the respondent may commit sexual assault under [WIS. STAT. §] 940.225(1), (2), or (3), or under [WIS. STAT. §] 948.02(1) or (2), against the petitioner.

Sec. 813.12(4)(d)1.a.-b.

---

Sheila asserts that "the trial court did not examine [Chojnacki's] statement [to Grant] through this lens at all, instead concluding only that 'we don't punish people on their thoughts.'" According to Sheila, Chojnacki's "words, combined with the language of the 2021 DAI"—which prohibited Chojnacki from "abusing, threatening, or contacting [Sheila] in an unlawful way; coming to her residence to intimidate her; or turning his guns on her"—"the sinister tone that [Grant] testified to," and "the long history of domestic abuse that [Sheila] testified to … are sufficient to show that his statement constituted a threat to commit an act of unlawful violence."

Given our decision to reverse and remand this case to the circuit court, we will not specifically address the court's findings, or lack there of, regarding Chojnacki's alleged statement to Grant. We merely note that if the court had properly considered all of the evidence and applied the law with regard to a "true threat," it might have affected the court's decision regarding Chojnacki's statement to Grant. *See Wittig*, 287 Wis. 2d 353, ¶¶16-20 (discussing the analysis of a "true threat").

16

¶27 The standard for granting a four-year DAI is materially different from the standard for a ten-year extension.[11] Accordingly, the failure to grant a requested ten-year extension does not preclude a court from granting a subsequent request for a four-year DAI. The requirement that the petitioner establish a substantial risk of first- or second-degree intentional homicide or felony sexual assault is significantly more limited than the requirements under WIS. STAT. § 813.12(4)(a)3. *Compare* § 813.12(4)(a)3., *with* § 813.12(4)(d)1. Additionally, § 813.12(4)(d)2. provides that "[t]his paragraph does not prohibit a petitioner from requesting a new temporary restraining order under sub. (3) or injunction under this subsection before or at the expiration of a previously entered order or injunction." Therefore, under this statutory scheme, the fact that Sheila did not meet the limited evidentiary standard for a ten-year extension, and that the 2021 DAI then expired, does not mean that Sheila is precluded from using that same evidence to meet her burden under § 813.12(4)(a) and (aj) to request a new four-year DAI.

¶28 Finally, Chojnacki argues that Sheila should be estopped from arguing that the circuit court erred because Sheila's counsel either consented to or conceded to limiting the evidence. At the hearing, the interaction between the court and Sheila's counsel was as follows:

> THE COURT: All right. But you would agree with me that the previous … injunction, four-year injunction, that was granted is res judicata, that those facts have been litigated,

---

[11] We note that WIS. STAT. § 813.12(4)(d)1m. also provides that, "[u]pon request by the petitioner, a judge or circuit court commissioner may order that the injunction is in effect permanently if the respondent has been convicted of a violation of [WIS. STAT. §] 940.225(1) to (3) in which the petitioner was the crime victim," which order is subject to review under WIS. STAT. § 813.126(1m).

17

> those facts have been proven, those facts are what they are, correct?
>
> ….
>
> [Sheila's counsel]: Yes.
>
> ….
>
> THE COURT: And … then it expired or was going to expire. You asked for an extension. It was denied?
>
> [Sheila's counsel]: Yes.
>
> THE COURT: You don't deny any of that, that that's res judicata that all of those issues were handled in that matter?
>
> [Sheila's counsel]: Yes. I would just argue that this is separate from the extension….
>
> THE COURT: Yeah. And … I understand that. I'm just … saying that it … was granted. It … expired … and it was based upon facts that were set forth at that hearing?

¶29 We disagree that the discussion between the circuit court and Sheila's counsel was a concession or that counsel consented to limiting the evidence. First, res judicata has two definitions. The first is "[a]n issue that has been definitively settled by judicial decision." *Res judicata*, BLACK'S LAW DICTIONARY (12th ed. 2024). The second is the *doctrine of* res judicata, meaning "[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit." *Id.* In addition, the term res judicata has not been used to refer to the second definition in this state since 1995, when it was *replaced* by the term claim preclusion. *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 549-50, 525 N.W.2d 723 (1995). Finally, the court's statement—"that those facts have been litigated, those facts have been proven, those facts are what they are"— appears to be correctly referencing the first definition of res judicata above.

18

¶30    Therefore, based on this interaction,[12] we conclude that it was reasonable for Sheila's counsel to believe that the circuit court was merely affirming that the facts that served as the basis for the 2021 DAI had already been definitively proven—such that Chojnacki cannot now attempt to deny those facts—and that counsel's affirmative responses to the court's questions were based on her agreement with that assertion.    Counsel did not definitively agree or concede that those same previously proven facts could not then serve as a basis for a second DAI.    Said differently, Sheila did not forfeit this argument and cannot be estopped from raising it on appeal because of the circuit court's misunderstanding or error.

¶31    For the foregoing reasons, we conclude that the circuit court erroneously exercised its discretion by failing to consider the entirety of Chojnacki's proven and alleged pattern of abuse, as required by WIS. STAT. § 813.12(4)(a) and (aj), in determining whether a DAI should be issued. Therefore, we reverse and remand this case to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[12] Later in the hearing, and without obtaining Sheila's counsel's agreement, the circuit court clarified its meaning when it stated, "[B]ut, again, we're focusing on facts that weren't taken care of in the first four-year injunction *because that is res judicata and can't be the basis of the new* [*injunction*] *here* so you may call your first witness." (Emphasis added.)  As explained herein, this stated application of "res judicata" was incorrect, as a matter of law.